## MANER *v.* THE STATE.

No. 10824.   October 16, 1935.

C. G. Battle, for plaintiff in error.

John S. McClelland, solicitor, John A. Boykin, solicitor-general, and J. W. LeCraw, contra.

BECK, Presiding Justice.   H. L. Maner was tried in the criminal court of Atlanta for the offense of misdemeanor, it being alleged in the accusation that on May 23, 1934, he failed and refused to turn his vehicle as far as reasonably possible to the right in order to allow free passage on the left of his vehicle while traveling in a westerly direction in and along McDonough boulevard, a public highway of Fulton County, after signal was given him by E. D. West, who was operating another automobile in the same direction, of his approach and of his desire to pass Maner on the highway. In the petition for certiorari error is assigned on the overruling by the trial court of certain demurrers to the accusation, raising constitutional questions, and on the rulings of the court upon ob-

jections to evidence, and on a portion of the charge. The evidence objected to was in part as follows: The court allowed W. J. Nelms, a witness for the State, to testify: "After we parked there, two V-8 Fords came along right behind one another, and the front car was loaded with liquor-cans and you could see them. . . I saw this. They were plumb up to the door glass. There was a V-8 car behind it. I don't know who was driving the front car. I saw the whisky-cans in it. Mr. Maner drove the car immediately behind it." And the State was also permitted to show that a negro man was in the car with the defendant, Maner, and that this negro was looking back and forth, and would tell Maner something, and then Maner would change his course. A witness for the State was permitted to testify that "he was in court on June 15, when the case of H. L. Maner was called." A witness was permitted to answer the question, "Did you ever see him, the defendant, work on the automobile of Jeff Mays?" A witness for the defendant on cross-examination, was asked the question: "Did you know about his [defendant] being arrested?" The court also permitted State's counsel to propound to the witness this question: "Were you working for him when he was arrested for five gallons of whisky on Chappell Street?" The answer to this question is not stated. The court also permitted the question to be propounded to a witness for the defendant: "Were you working for Maner on October 21, 1932, when he was arrested for five gallons of whisky?" The witness answered: "I was not with him or working for him at that time." To the same witness the State propounded the question: "Do you know Mr. Maner's brother?" The answer to this question is not shown. Another question objected to was as follows: "A man got you to leave Atlanta at 12:30 at night to go to Stockbridge to put some new parts in a breaker-box in a Chevrolet? He could have gotten somebody there cheaper, couldn't he?" The answer to this question is not shown. Another witness was permitted to testify that some time in November, 1932, they caught Maner with sixty gallons of liquor in College Park in an automobile.

The jury returned a verdict of guilty. Maner applied for writ of certiorari. The judge declined to issue the writ, and Maner excepted.

The defendant demurred to the accusation on certain grounds in

which are raised questions as to the constitutionality of the act, which is the basis of the accusation. It is claimed that his rights as provided by the paragraph of the constitution declaring that "no law or ordinance shall pass which refers to more than one subject-matter or contains matter different from what is expressed in the title thereof," were violated. The accusation was drawn under an act amending an act known as the Georgia motor-vehicle law, approved August 23, 1927 (Ga. L. 1927, p. 226). The title of this act is as follows: "An act to amend an act known as the 'Georgia motor-vehicle law,' approved November 30, 1915, and as amended by an act approved August 20, 1918, and as amended by an act approved August 16, 1919, and as amended by an act approved August 15, 1921; to provide for a commissioner of vehicles; to define terms used; to provide for registration of motor-vehicles, tractors, trailers, dealers, and manufacturers of motor-vehicles, and chauffeurs, and to provide fees for said registration; to describe number-plates and provide for fastening them on certain vehicles; to provide for the regulation of lights and brakes to be used; to regulate the use of highways by vehicles registered in another State; to provide traffic regulations; to regulate the size, weight, and type of wheels of certain vehicles; . . to provide for the expense of registration and the disbursement of fees received; to prescribe duty and salary of registration clerk and salary of commissioner of vehicles; to prohibit throwing certain things on the highways; to provide for the enforcement and penalties for violation of this act; and to repeal all laws and parts of laws in conflict with this act; and for other purposes." By section 12 (d) of this act it is provided that "an operator overtaking and desiring to pass a vehicle shall blow his horn, and the operator of the vehicle so overtaken shall promptly upon such signal turn his vehicle as far as reasonably possible to the right in order to allow free passage on the left of his vehicle." It is clear from a reading that this matter contained in section 12(d) is sufficiently covered by the title of the act, and is not matter different from what is there expressed. A part of the purpose of the act of 1927, as stated in the title, is to provide traffic regulations. Traffic is defined in Webster's Dictionary as "the passing to and fro of persons, animals, vehicles, or vessels, along a route of transportation, as along a street, canal, etc.; as, the traffic was directed by a policeman." In Withey v. Fowler

Co., 164 Iowa, 377 (145 N. W. 923, 927), it is said: "To the mind of one versed in the use of the English language a reference to 'street traffic' or 'traffic upon the streets' of a city does not, in our judgment, suggest simply the business of buying and selling and exchanging of commodities, but also the general movements and intercommunication of the people carried on upon our streets, including travel, the driving of vehicles, the hauling of movables, the transportation of passengers, and all the multifarious activities which may properly avail themselves of the use of a public highway. Such employment of the word appears to be entirely legitimate, and so clearly so that we think that a mere reading of the title of this ordinance must instantly and inevitably direct the thought of the reader to the very matters which it attempts to regulate." It is unnecessary to cite other authorities. It is manifest that section 12 (d) is clearly a traffic regulation and is covered by the title of the act.

The fact that a penalty for a violation of the act is not referred to in the title does not render the act unconstitutional. The fixing of a penalty was a part of the traffic regulations referred to in the title. It is one of the means by which the act was made effective. In fact it is the only efficacious remedy that could be provided for violators of this law.

Headnotes 2-6 need no elaboration.

*Judgment affirmed. All the Justices concur, except Russell, C. J., absent because of illness.*