UNITED STATES v. GOLDEN GATE BRIDGE AND HIGHWAY DIST. OF CALIFORNIA.

No. 21020–S.

District Court, N. D. California, S. D.

March 11, 1941.

Frank J. Hennessy, U. S. Atty., and W. E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., and John L. Wheeler, Sp. Atty., of Los Angeles, Cal., for plaintiff.

John L. McNab, of San Francisco, Cal., for defendant.

ST. SURE, District Judge.

This is a suit brought under the Federal Declaratory Judgment Act, 28 U.S.C.A. § 400, to declare the rights of the parties relative to toll-free passage over Golden Gate Bridge, arising under certain acts of Congress and the terms of a permit issued by the Secretary of War, granting to defendant rights of way across two military reservations, located on either side of Golden Gate Strait, which grant made possible the erection of the bridge. The complaint also contains a prayer for an accounting which must be considered abandoned as there are no facts in evidence upon which an order for an accounting could be made. There is a request for injunctive relief. The controversy was submitted upon an agreed statement of facts.

For a better understanding of the questions presented for decision, which involve interpretation of conditions imposed in granting the permit, a statement of the legal status of the parties, their representatives or agents, and their acts in relation to the transaction, follows.

The California Legislature, on May 25, 1923, passed Act 936, Gen.Laws 1923, Stats. 1923, p. 452, providing for the incorporation, organization, and management of bridge and highway districts; allowing such districts to acquire and construct highways, bridges, approaches, and all property necessary therefor; providing for the issuance and payment of bonds by said districts and the levying of taxes, the collection of tolls, and the annexation of additional territory. Residents of the Counties of Del Norte, Sonoma, Marin, San Francisco, and portions of Mendocino and Napa, who were interested in bridging the Golden Gate, were represented by Commercial Development and Trans-Bay Bridge Committee of the San Francisco Board of Supervisors, hereinafter referred to as the Committee. On March 31, 1924, the Committee, through the District Engineer of San Francisco, applied to the Secretary of War for approval of plans for a bridge. On December 20, 1924, the Secretary of War replied that the project met with his approval, subject to certain conditions, one of which was that passage of Government traffic be permitted at all times free of charge.

Under the authority of Act 936 the Golden Gate Bridge and Highway District of California, defendant herein, was incorporated on December 4, 1928; and its incorporation was validated by the California Legislature by Act 937, Gen. Laws 1937, approved April 10, 1929, effective August 14, 1929, Stats.1929, page 165; and Act 938, Gen.Laws 1937, approved and effective March 12, 1931, Stats.1931, page 77. The six counties above mentioned, whose representative Committee had secured the approval of the Secretary of War to the project, transferred their rights and interests to the defendant. Defendant thus had authority from the California Legislature to construct a bridge across Golden Gate Strait and the necessary highways of travel thereto, but was confronted with the necessity of securing from the Federal Government the privilege of constructing these highways across the military reservations lying at each end of the proposed bridge, and that of erecting and maintaining the ends of the bridge thereon.

The Secretary of War has authority, in his discretion, to permit the construction of such highways (Act of July 5, 1884, c. 214, § 6, 23 Stat. 104, 10 U.S.C.A. § 1348, and 43 U.S.C.A. § 933); and the State Legislature can authorize the construction of such a bridge where the navigable portion of the waterway lies wholly within the limits of a single state, as does the Golden Gate Strait, "provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War." Act of March 3, 1899, c. 425, § 9, 30 Stat. 1151, 33 U.S.C.A. § 401. Accordingly, defendant, on April 3, 1930, pursuant to (and with special reference to) the letter of December 20, 1924,

from the Secretary of War, submitted to that official plans for approaches connecting both San Francisco and Marin Counties with the proposed bridge.

The Chief of Engineers and the Secretary of War on August 9th and 11th, 1930, respectively, approved the "location and plan of bridge" under the authority of the Act of March 3, 1899, 33 U.S.C.A. § 401. On October 27th of that year the Secretary of War, under the authority of the Act of July 5, 1884, 10 U.S.C.A. § 1348 and 43 U.S.C.A. § 933, granted defendant a right of way for highways across the military reservations in the Presidio of San Francisco and in Fort Baker, together with permission to erect, operate, and maintain the ends of the Golden Gate Bridge on said military reservations. This permit was granted, subject to certain conditions providing in part as follows:

"6. That Government traffic, and all military and naval personnel and their dependents, and all civilians traveling under proper military authority shall have use of the bridge and roads free of charge. * * *

"11. * * * a. That nothing herein contained shall be construed to give to the State of California or any of its agents, authority at any time to regulate traffic of military personnel or vehicles upon the said bridge or roads. All traffic upon said roads and upon said bridge shall be free from any tolls, charges or any form of obstruction by state or other agencies, against military and naval personnel and their dependents, and civilians upon request of proper military authority. The Secretary of War or his authorized representative may prescribe regulations for all traffic on said bridge and roads; and the State of California shall take such steps as may be necessary to adopt and make effective under the laws of California the regulations so prescribed."

As this permit was not entirely satisfactory to defendant, its authorized Committee, on December 12, 1930, submitted to the Chairman of Engineering Board at San Francisco proposed changes. On February 13, 1931, the Secretary of War issued an amended permit which contained the following conditions:

"6. That civilian employees of the Army and Navy traveling on government business under proper military authority, and government traffic, and all military and naval personnel and their dependents,

shall have the use of the bridge and roads free of charge. * * *

"11. That this grant shall not be effective unless and until the State of California shall have made application to Congress for a retrocession of jurisdiction over the rights of way covered by this grant during the life thereof and shall have declared by legislative action that it will accept such retrocession of jurisdiction from the United States, that it will make the bridge and the highways covered by this permit a part of the system of public highways of the State of California, and that it will assume the responsibility for managing, controlling, policing and regulating traffic thereon, all subject to the following limitations and to such other limitations as Congress may prescribe:

"a. * * * All traffic upon said roads and upon said bridge shall be free from any tolls, charges or any form of obstruction by state or other agencies, against military and naval personnel and their dependents, civilians of the Army and Navy traveling on government business under military authority, and government traffic."

These are the conditions now in effect, and concerning the validity and meaning of which this suit arises.

On March 4, 1931, Senate Joint Resolution No. 11 was passed, St.1931, p. 2815, accepting the permit on behalf of California, "together with each, all, every and singular the terms, conditions, limitations, reservations, and requirements therein contained"; and a week later defendant accepted it with the same provisos. On July 20, 1935, the Governor of California approved the act of the Legislature, St.1935, p. 2402, accepting a retrocession of jurisdiction over the rights so covered in the permit of February 13, 1931, "subject to all of the terms and conditions contained in said permit."

On February 11, 1936, the President approved the act of Congress of that date, 49 Stat. 1108, S. 2175, Public No. 439, granting the retrocession of jurisdiction to California "subject to all of the terms and conditions contained in said permit."

Pursuant to lawful authority including the permit, defendant constructed the bridge and highways. From May 28th to November 13th, 1937, disputes arose as to the interpretation of the above mentioned conditions, with regard to the extent of the toll-free traffic thereby contemplated. On the last mentioned date, defendant, pursuant to a resolution of its Board of Di-

rectors, issued the following order: "Effective immediately, all outstanding Non-Revenue Tickets (Form 90) are to be refused and only Government vehicles of the Army and Navy (bearing Federal numbers and/or plates) are to be passed on Form 91."

Toll-free passage was thereupon denied to all members of all departments of the United States Government except those of the Army and Navy and persons actively employed in their behalf. This resulted in the present suit. While, as previously stated, the action is one for declaratory and injunctive relief, the answer of the defendant puts in issue the validity of the questioned provisions. In the amendments to its answer defendant "denies that the Secretary of War in either the preliminary permit of October 27, 1930, or the permit of February 13, 1931, had any legal power or authority to impose any condition or make reservation as to free tolls over the Golden Gate Bridge;" alleges that the Congress of the United States was without authority to provide for the exaction of any such requirement with respect to tolls, and that as the bridge in question was erected over State waters, neither the Congress nor the Secretary of War had any authority to deprive the defendant of the right to impose tolls, in its discretion, and without discrimination.

Denies that the Board of Directors of Golden Gate Bridge and Highway District had any legal power or authority to grant free tolls or to accede to any exaction of tolls, whether for the War or Navy Departments, or any other branch of the United States service.

"Denies that the Golden Gate Bridge and Highway District is an agency of the State of California but alleges that it is a separate corporate entity. Denies that the State of California had any legal authority by accepting a retrocession of jurisdiction to bind or control the Golden Gate Bridge and Highway District and alleges that any act on the part of the Legislature of the State of California depriving the Golden Gate Bridge and Highway District of the right to impose tolls was unconstitutional and void and deprives said District of its property without due process of law."

There are thus presented for decision two main questions: First, are the questioned provisions valid, and as a consequence enforceable? Second, if valid and enforceable, what is their meaning and effect?

As to the first question, defendant bases much of its argument on the erroneous assumptions that the bridge structure may be considered entirely separate and distinct from the ground upon which it was erected and from the highway extensions and approaches indispensable to its operation: that the function exercised by the Secretary of War in approving the plans for the bridge should be considered separately from the function he exercised in granting the easement necessary to its construction.

It was a single project. As stated by the United States Attorney, the highway extensions and approaches were not considered separately from the bridge. Each was dependent upon the other, and without one the other could not exist. This is borne out by all of the facts and circumstances leading up to and resulting in the consummation of the project. The letter of the Secretary of War, dated December 20, 1924, which is the basis of the whole transaction here under scrutiny, makes this quite clear. In answer to the original application for permission to erect the bridge, the Secretary wrote:

"Your application has received full consideration by the War Department, and I am pleased to inform you that the *project as a whole* meets with my approval, subject to the following comments:

"Since this bridge connects two military reservations there was a military question involved which prevented it being handled in the ordinary manner and final action taken by the Chief of Engineers and the Secretary of War only, as would have been the case if the question of the interests of navigation alone had been the only one to consider. The objections to the bridge from the military point of view can be eliminated if the City of San Francisco and the counties interested in its construction will bear all the expense connected with the moving, rebuilding and replacing of elements of the defensive and other military installations damaged by such construction: will bear the expense of construction and maintenance of approaches to the bridge; will give the United States complete control over the bridge in time of war; will permit Government traffic at all times free of charge; * * *" [Emphasis supplied.]

The contention that Congress has not the power to make the questioned pro-

visions a part of its grant is untenable. United States v. City and County of San Francisco, 310 U.S. 16, 29, 30, 60 S.Ct. 749, 84 L.Ed. 1050. I am of the opinion that such power was in this instance delegated to the Secretary of War.

In the Act of July 5, 1884, 10 U.S.C.A. § 1348, and 43 U.S.C.A. § 933, Congress gave the Secretary of War discretion to permit the extension of roads across a military reservation "whenever in his judgment the same can be done without injury to the reservation or inconvenience to the military forces stationed thereon." This clause expresses the only limitation to his judgment. The exercise of this discretion was not the making of the law (Moers v. City of Reading, 21 Pa. 188, 202), and Congress could properly delegate this power. 8 American Jurisprudence, pp. 914, 915, § 7; Union Bridge Company v. United States, 204 U.S. 364, 27 S.Ct. 367, 51 L.Ed. 523; South Carolina v. Georgia, 93 U.S. 4, 13, 23 L.Ed. 782. There can be no doubt that when the Secretary has the authority "in his discretion" to grant the permit, he has the power to condition it. United States v. City and County of San Francisco, D.C., 23 F.Supp. 40, 45-47; United States v. City and County of San Francisco, 310 U.S. 16, 29, 30, 60 S.Ct. 749, 84 L.Ed. 1050; Sunderland v. United States, 266 U.S. 226, 235, 45 S.Ct. 64, 69 L.Ed. 259; Southern Pacific Co. v. Olympian Dredging Co., 260 U.S. 205, 208, 43 S.Ct. 26, 67 L.Ed. 213; Pike Rapids Power Co. v. Minneapolis St. P. & S. S. M. R. Co., 8 Cir., 99 F.2d 902, 909, 910; James v. Dravo Contracting Co., 302 U.S. 134, 148, 149, 58 S.Ct. 208, 82 L.Ed. 155, 114 A.L.R. 318; Light v. United States, 220 U.S. 523, 536, 537, 31 S.Ct. 485, 55 L.Ed. 570; Newport & C. Bridge Co. v. United States, 105 U.S. 470, 479, 482, 26 L.Ed. 1143.

Defendant argues that it had no authority to grant free tolls, and that the State of California had no authority by accepting a retrocession of jurisdiction to bind defendant. As we have seen, exaction of the toll-free privilege was not an innovation in the permit. The first communication regarding this project (the letter of December 20, 1924, from the Secretary to the Committee) states as one of the conditions of the granting of the permit that "Government traffic" will be permitted "at all times free of charge." This condition was accepted by the Committee, and defendant, after its incorporation, accepted the "rights, title, privileges, or licenses" of that Committee. By resolution of the Board of Supervisors of San Francisco, approved March 27, 1930, defendant was designated as the agency, "selected for the purpose of further carrying out and advancing the said plans and securing the approval and permits mentioned in the said communication of said John W. Weeks, Secretary of War, dated December 20, 1924." The Board of Supervisors of Marin County passed a similar resolution on April 14, 1930. Defendant was thereupon put upon notice of the contents of the letter of December 20, 1924, from the Secretary of War. It is obvious, of course, that defendant could not accept the "rights, title, privileges, or licenses" and reject the responsibilities. The California Legislature, the defendant, the Governor of California, Congress, and the President of the United States, all approved and accepted the permit subject to all its conditions.

Defendant contends that it is not an agency of the State of California; that it "was a separate and independent corporate body which could not have its property taken from it by any consent of the state legislature." In Commissioner of Internal Revenue v. Harlan, 80 F.2d 660, the Ninth Circuit Court of Appeals has directly held that defendant is a governmental agency.

Defendant also argues that any act on the part of the Legislature depriving defendant of the right to impose tolls was unconstitutional and void, and deprived defendant of its property without due process of law. One cannot avail himself of the benefits of a statute or law and at the same time challenge its constitutionality. Buck v. Kuykendall, 267 U.S. 307, 316, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286; Daniels v. Tearney, 102 U.S. 415, 421, 26 L.Ed. 187; Grand Rapids & Indiana Railway Co. v. Osborn, 193 U.S. 17, 29, 24 S.Ct. 310, 48 L.Ed 598. In arguing that the toll-free privilege is unconstitutional, defendant cites cases wherein the privilege was imposed by legislative act. Defendant fails to note the important distinction that in the case at bar the privilege was purely a matter of contract between plaintiff and defendant. The Court can do no more than interpret that contract. Under § 10 of the act authorizing defendant's incorporation (Title 72, Bridge and Highway Districts Act, Stats.1923, page 452, Act 936, Gen.Laws1923), defendant

had power "10. To make contracts * * * for the purpose of carrying on the business of the district, and to do all acts necessary for the full exercise of the foregoing powers." If defendant did not approve of the terms, it should have rejected the permit and made a better bargain. Defendant's argument as to the "practical" aspects of the proposition is immaterial. Courts cannot, where there is no fraud, relieve from a bad bargain.

 Defendant contends that the toll-free conditions violate § 1 of Amendment XIV of the United States Constitution in that they deny the equal protection of the laws to citizens of the Golden Gate Bridge and Highway District of California and of the United States generally because they create a favored class. The Constitution provides that "No state shall * * * deny to any person within its jurisdiction the equal protection of the laws." This provision is inapplicable, because even if equal protection were denied here, it would be the result of defendant's own contract, and not any action of the state. Mills v. Lowndes, D.C., 26 F.Supp. 792, 798. However, the equal protection of the laws has not been denied to anyone, and it is not true that a favored class is created because the law applies equally to all members of each class. *All* civil employees of the Army and Navy, *all* military and naval personnel and their dependents, and *all* Government traffic are treated the same. The permit did not say that some members of these classes should pass toll-free and some should not. There was no discrimination within a class.

 The rule as set forth by the United States Supreme Court is that: "All persons engaged in the same business within it are treated alike; are subject to the same restrictions, and are entitled to the same privileges under similar conditions." If it affects alike all persons similarly situated, it is not within the Fourteenth Amendment. Barbier v. Connolly, 113 U.S. 27, 31, 5 S.Ct. 357, 359, 28 L.Ed. 923; Williams v. State of Arkansas, 217 U.S. 79, 90, 30 S. Ct. 493, 54 L.Ed. 673, 18 Ann. Cas. 865; Dixie Ohio Express Co. v. State Revenue Comm., 306 U.S. 72, 78, 79, 59 S.Ct. 435, 83 L.Ed. 495; Welch Co. v. New Hampshire, 306 U.S. 79, 82, 59 S.Ct. 438, 83 L.Ed. 500.

 Defendant insists repeatedly that as plaintiff contributed nothing to the project, it could exact no privileges. While it is true that plaintiff gave no financial aid, it did grant to defendant indispensable rights of way across two military reservations, and defendant now occupies 162 acres of plaintiff's land, in addition to the Funston avenue approach. Defendant cannot accept the benefits of this dispensation and reject the obligations. United States v. City and County of San Francisco, D.C., 23 F.Supp. 40, 46, affirmed 310 U.S. 16, 60 S.Ct. 749, 84 L.Ed. 1050. Privileges and responsibilities are reciprocal. Without the aid of the Federal Government, Golden Gate Bridge would still be an engineer's dream.

 In considering the second question, relating to the meaning and effect of the questioned provisions, it is clear that there are four classes of toll-free traffic specified in paragraphs 6 and 11a of the permit of February 13, 1931, as follows:

(a) Civilian employees of the Army and Navy traveling on Government business under proper military authority,

and (b) Government traffic,

and (c) all military and naval personnel,

and (d) dependents of such personnel.

From the briefs submitted by counsel and from the agreed statement of facts it is apparent that the meaning of (b) "Government traffic" is the only real question in issue.

The plaintiff contends that the provision as to "Government traffic". includes all traffic of any description by or on behalf of the United States Government or any of its departments or agencies, on official business. The defendant contends that the phrase means "Government traffic" of the Army and Navy only, and not all Government traffic of every description of any department or agency.

The language of the paragraphs under discussion is so clear as to admit of no interpretation or construction. There is nothing ambiguous about a single sentence, phrase, or word. I cannot agree with defendant that anyone "reading these provisions could only say that the government traffic referred to was government traffic of the military and naval forces." I think that the term was originally used as a general term, not as complementary to Army and Navy traffic, as defendant contends. The only limitation is found in class (a) which provides that "civilian employees of the Army and Navy *traveling on gov-*

*ernment business under proper military authority"* shall use the bridge and roads free of charge. [Emphasis supplied.] "Government traffic" means what the words import. They denote Government official traffic. The word "Government" as used applies to the United States. The modern definition of "traffic" is commerce; trade; the subjects of transportation on a route, as persons or goods; the passing to and fro of persons, animals, vehicles, or vessels, along a route of transportation, as along a street, canal, etc. Webster's 1931 Dictionary; Withey v. Fowler Co., 164 Iowa 377, 145 N.W. 923, 927; Maner v. State, 181 Ga. 254, 181 S.E. 856, 858; Allen v. City of Bellingham, 95 Wash. 12, 163 P. 18, 27; Stewart v. Hugh Nawn Contracting Co., 223 Mass. 525, 112 N.E. 218, 219.

The intention of the parties is shown by the communications had between them and the action taken thereon. It appears definitely that the term "Government traffic" stood alone in the basic communication from the Secretary of War wherein the privilege now enjoyed by the defendant was extended.[1] The significant condition there expressed was that those interested in the construction of the bridge should permit Government traffic at all times free of charge. This basic communication was regarded by the defendant as establishing the right to construct the bridge;[2] and was specifically referred to in its application for the permit it now is exercising.[3] Thereafter on October 27, 1930, the Secretary of War granted the permit subject to certain conditions, part of which are identical with those specified in paragraphs 6 and 11a, now under consideration. On December 12, 1930, request was made of the Secretary to amend the permit in certain particulars, among which were the insertion of the words "on government business" after the word "authority" in paragraph 6, and after the word "civilians" in the second sentence of paragraph 11a. On February 13, 1931, the Secretary of War issued the amended permit in lieu of and superseding that of October 27, 1930, which made certain of the changes requested, particularly those mentioned above, and which are now in force.

There is nothing in the facts and circumstances of this case to show any intention to limit the general term "Government traffic" to traffic of the War and Navy Departments. The additional classifications indicate of themselves a contrary intention; as originally defined in the permit of October 27, 1930, the three other classes were clearly not within the term "Government traffic." Military and naval personnel in their unofficial movements do not constitute Government traffic. This is true of the movements of their dependents, and equally true of the movement of civilian employees under military authority. The addition of the words "on Government business" was at the request of the defendant and obviously aimed solely at restricting a privilege to a particular class.

The many cases cited by defendant on the question of construction have no bearing in a case such as this, where the words used are not ambiguous, and the intent of the contracting parties is crystal clear.

The facts and the law support the contentions of plaintiff, and judgment will be given accordingly.

---

[1] Letter of Secretary of War to Chairman of Committee, dated December 20, 1924; exhibit No. 1(a).

[2] Letter of President of defendant corporation to Commanding General, 9th Corps Area, San Francisco, dated April 3, 1930; exhibit No. 4(a).

[3] Letter of Chief Engineer of defendant corporation to U. S. District Engineer, San Francisco, dated May 1, 1930; exhibit No. 4(b).