## GOLDEN GATE BRIDGE & HIGHWAY DIST. OF CALIFORNIA, v. UNITED STATES.

### No. 9900.

Circuit Court of Appeals, Ninth Circuit.

Feb. 16, 1942.

Rehearing Denied April 10, 1942.

John L. McNab, of San Francisco, Cal., for appellant.

Norman M. Littell, Asst. Atty. Gen., Charles R. Denny and John F. Cotter, both of Washington, D. C., and Frank J. Hennessy, U. S. Atty., and William E. Licking, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT, MATHEWS, and HANEY, Circuit Judges.

MATHEWS, Circuit Judge.

This appeal is from a declaratory judgment which, in an action by appellee, the United States, against appellant, Golden Gate Bridge and Highway District of California,[1] declared that appellee is entitled to "toll free passage over [Golden Gate Bridge] and the approaches thereto for all traffic of any description by or on its behalf or by or on behalf of any of its departments or agencies on official business."

Golden Gate Bridge and its approaches were constructed by appellant and are maintained and operated by appellant. The bridge spans a strait called the Golden Gate, which is navigable water of the United States lying wholly within the limits of California. Its approaches are State roads of California. The south end of the bridge and the road constituting its south approach are on a military reservation called the Presidio of San Francisco. The north end

[1] Appellant is a public corporation and political subdivision of California comprising the City and County of San Francisco, the Counties of Marin, Sonoma and Del Norte and portions of the Counties of Napa and Mendocino.

of the bridge and the road constituting its north approach are on a military reservation called the Fort Baker Reservation. Thus, before commencing construction of the bridge and its approaches, it was necessary to obtain (1) approval of the location and plans of the bridge by the Chief of Engineers and by the Secretary of War[2] and (2) the Secretary's permit to erect and maintain the ends of the bridge on the reservations and to extend the roads constituting its approaches across the reservations.[3]

The location and plans of the bridge were approved by the Chief of Engineers on August 9, 1930, and by the Secretary on August 11, 1930. On October 27, 1930, the Secretary granted appellant a permit to erect and maintain the ends of the bridge on the reservations and to extend the roads constituting its approaches across the reservations, subject to certain provisions and conditions. These were set forth in numbered paragraphs. Appellant suggested that changes be made in certain paragraphs of the permit. Accordingly the Secretary, on February 13, 1931, granted appellant an amended permit (hereafter called the permit), paragraphs 6, 11 and 14 of which read as follows:

"6. That civilian employees of the army and navy traveling on Government business under proper military authority, and Government traffic, and all military and naval personnel and their dependents, shall have the use of the bridge and roads free of charge."

"11. * * * All traffic upon said roads and upon said bridge shall be free from any tolls, charges or any form of obstruction by State or other agencies, against military and naval personnel and their dependents, civilians of the army and navy traveling on Government business under military authority, and Government traffic. * * *"

"14. This permit is granted in lieu of and supersedes permit to [appellant] dated October 27, 1930."

Appellant accepted the permit, constructed the bridge and its approaches and, since completion thereof on May 28, 1937, has maintained and operated the same. The bridge has been and is operated as a public toll bridge, the usual and ordinary toll being 50 cents for each automobile using the bridge and five cents for each passenger in excess of five traveling in such automobile, no charge being made for the use of the approaches. Appellant has not demanded or collected any toll for the use of the bridge by military or naval personnel or their dependents or by civilian employees of the army or navy traveling on Government business under military authority, but has at all times conceded, and now concedes, that all such are entitled to free use of the bridge.

As to whether appellee is entitled to free use of the bridge for Government traffic other than army and navy traffic, a controversy has existed between appellant and appellee since November 13, 1937; appellant contending that the phrase "Government traffic," as used in paragraphs 6 and 11 of the permit, means army and navy traffic only; appellee contending that it means all Government traffic. To settle the controversy, this action was brought. The judgment below upheld appellee's contention. Appellant seeks reversal.

■ Appellant asks us to construe paragraphs 6 and 11 of the permit and particularly the phrase "Government traffic." The request assumes that the language of paragraphs 6 and 11 is ambiguous, since, otherwise, construction could not be resorted to. 17 C.J.S., Contracts, § 294; 12 Am. Jur., Contracts, § 229. The assumption is unwarranted. As stated in the trial court's

[2] Section 9 of the Act of March 3, 1899, c. 425, 30 Stat. 1151, 33 U.S.C.A. § 401, provides: "It shall not be lawful to construct or commence the construction of any bridge, dam, dike, or causeway over or in any * * * navigable river, or other navigable water of the United States until the consent of Congress to the building of such structures shall have been obtained * * *: Provided, That such structures may be built under authority of the legislature of a State across rivers and other waterways the navigable portions of which lie wholly within the limits of a single State, provided the location and plans thereof are submitted to and approved by the Chief of Engineers and by the Secretary of War before construction is commenced."

[3] Section 6 of the Act of July 5, 1884, c. 214, 23 Stat. 104, 43 U.S.C.A. § 933, provides: "The Secretary of War shall have authority, in his discretion, to permit the extension of State, county, and Territorial roads across military reservations; to permit * * * the erection of bridges thereon * * * whenever in his judgment the same can be done without injury to the reservation or inconvenience to the military forces stationed thereon."

opinion:[4] "The language of the paragraphs under discussion is so clear as to admit of no interpretation or construction. There is nothing ambiguous about a single sentence, phrase, or word. * * * The many cases cited by [appellant] on the question of construction have no bearing in a case such as this, where the words used are not ambiguous, and the intent of the contracting parties is crystal clear."

■ It is immaterial, if true, that appellee's counsel conceded in the trial court that the language of paragraphs 6 and 11 is ambiguous. Whether the language is ambiguous or not is a question of law, as to which the trial court was not, nor are we, bound by any concession which counsel may have made. If, however, it were deemed necessary to construe paragraphs 6 and 11, the construction contended for by appellant would be rejected for the following reasons:

■ In construing these paragraphs (if construction were required), our aim should be to ascertain and give effect to the intention expressed therein. 17 C.J.S., Contracts, § 295; 12 Am.Jur., Contracts, § 227. Clearly that intention was to exempt from all tolls, charges and obstructions (1) all use of the bridge and roads by or on behalf of appellee and (2) all use thereof by military and navy personnel and their dependents, whether on behalf of appellee or not.

The first objective could have been accomplished simply by providing that Government traffic should have the use of the bridge and roads free of charge and be free from obstruction by State or other agencies. However, such a provision, standing alone, would not have accomplished the second objective. To accomplish that objective, a clause was inserted specifically exempting military and naval personnel and their dependents. Without more, however, that clause might have been construed as exempting civilian employees of the army and navy, whether traveling on Government business or not. To avoid that result, a clause was inserted exempting such employees when, and only when, traveling on Government business under military authority.

In each of the paragraphs under consideration, the Secretary spoke of the two armed services as the "army and navy," not as the "Government," and spoke of their personnel as "military and naval" personnel, not as "Government" personnel. When, therefore, in these same paragraphs, the Secretary spoke of "Government" traffic, we cannot believe that he meant only that of the army and navy. We think that he used the word "Government" advisedly, and that he meant what he said.

■ As supporting its contention that the phrase "Government traffic," as used in paragraphs 6 and 11 of the permit, means only army and navy traffic, appellant refers to and quotes from a letter which, on December 20, 1924, the then Secretary of War wrote to the chairman of a committee of the Board of Supervisors of the City and County of San Francisco. The letter has no relevancy. It was not written by the Secretary who granted the permit, but was written by a former Secretary. It was not written to appellant and could not have been, for appellant was not organized until several years later. It did not purport to be, and obviously was not, a permit. It granted no rights of any kind or character. The bridge and its approaches were not constructed under or pursuant to the letter, but were constructed under and pursuant to the permit. The letter was not incorporated, mentioned or referred to in the permit. The meaning of language used in the permit, therefore, is not to be ascertained from the letter.

Even if the letter could be looked to for the purpose of ascertaining the meaning of the phrase "Government traffic," as used in paragraphs 6 and 11 of the permit, it would afford no support for appellant's contention. The letter discusses "plans of a bridge to be constructed across the Golden Gate, San Francisco Bay, in behalf of the City and County of San Francisco and the County of Marin,"[5] and states that—

"* * * I am pleased to inform you that the project as a whole meets with my approval, subject to the following comments:

"Since this bridge connects two military reservations there was a military question involved which prevented it being handled in the ordinary manner and final action taken by the Chief of Engineers and the Secretary of War only, as would have been the case if the question of the interests of navigation alone had been the only one to consider. The objections to the bridge

---

4 United States v. Golden Gate Bridge and Highway District of California, D. C., 37 F.Supp. 505, 511.

5 These plans were never formally approved and were never carried out.

from the military point of view can be eliminated if the City of San Francisco and the counties interested in its construction will bear all the expense connected with the moving, rebuilding and replacing of elements of the defensive and other military installations damaged by such construction; will bear the expense of construction and maintenance of approaches to the bridge; will give the United States complete control over the bridge in time of war; *will permit Government traffic at all times free of charge; * * ** (Emphasis supplied).

■ Nothing in the letter warrants the supposition that the writer thereof, when he used the phrase "Government traffic," meant only army and navy traffic. True, the writer of the letter stated that a military question was involved, but he did not— as appellant's brief erroneously asserts— state that only a military question was involved. Actually, every application for a permit to extend a State road across a military reservation or to erect a bridge thereon involves, first, the question: Shall the permit be granted? If that question is answered in the affirmative, a second question arises, namely: On what terms and conditions shall the permit be granted? Whether we call these military questions or not is unimportant. Call them what we may, they are questions to be decided by the Secretary of War,[6] not by the courts.

■ One of the conditions upon which the permit here involved was granted was that appellee should have free use of the bridge and its approaches for all Government traffic. We think the condition was a reasonable one, but even if it appeared to us unreasonable, we could not, under the guise of construction, read it out of the permit or relieve appellant from compliance therewith. Nor is appellant relieved from such compliance by the fact (stipulated by the parties) that "establishment and construction of the Golden Gate Bridge is of great advantage and convenience to the War Department."[7]

■ Appellant asserts that, to construe the phrase "Government traffic," in paragraphs 6 and 11 of the permit, as meaning all Government traffic, would violate all established rules of construction. Appellant is mistaken. The cardinal rule of construc-

tion is to ascertain and give effect to the intention expressed in the instrument which is being construed. 17 C.J.S., Contracts, § 295; 12 Am.Jur., Contracts, § 227. In this case, we believe and hold that the expressed intention was to exempt all Government traffic from tolls. So holding, we have no occasion to consider other rules of construction invoked by appellant.

Judgment affirmed.

---

[6] See footnote 3.

[7] This fact, though stipulated by the parties, was not mentioned in the trial court's findings—doubtless because that court recognized, as we do, its immateriality.