## CENTRAL NEBRASKA PUBLIC POWER & IRR. DIST. v. FEDERAL POWER COMMISSION.

### No. 13409.

Circuit Court of Appeals, Eighth Circuit.

April 18, 1947.

P. E. Boslaugh, of Hastings, Neb., and Robert D. Flory, of Columbus, Neb. (R. O. Canaday, of Hastings, Neb., R. H. Beatty and M. E. Crosby, both of North Platte, Neb., and Otto Walter, of Columbus, Neb., on the brief), for petitioner.

Willard W. Gatchell, Principal Atty., Federal Power Commission, of Washington, D. C. (Bradford Ross, Gen. Counsel, and Joseph B. Hobbs, Atty., Federal Power

Commission, both of Washington, D. C., on the brief), for respondent.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

WOODROUGH, Circuit Judge.

Petitioner, The Central Nebraska Public Power and Irrigation District, a municipality[1] and licensee under the Federal Power Act[2] brings these proceedings to review orders of the Federal Power Commission[3] which denied applications made by the District to be exempted under exemption provisions of Section 10(e) of the Act[4] from payment of charges assessed against it pursuant to said section in accordance with its Federal Power License for the years 1942 and 1943 and which required the District to pay a charge of $3,922.15 for the year 1942 and $7,344.10 for the year 1943.

The pertinent provisions of the section read: "Sec. 10. All licenses issued under this part shall be on the following conditions: * * * (e) That the licensee shall pay to the United States reasonable annual charges in an amount to be fixed by the Commission for the purpose of reimbursing the United States for the costs of the administration of this part * * * Provided further, That licenses for the development, transmission, or distribution of power by States or municipalities shall be issued and enjoyed without charge to the extent such power is sold to the public without profit or is used by such State or municipality for State or municipal purposes, except that as to projects constructed or to be constructed by States or municipalities primarily designed to provide or improve navigation, licenses therefor shall be issued without charge; * * *."

The District contends here, as it did before the Commission, (1) that the requirement of said Section "That the licensee shall pay to the United States reasonable annual charges in an amount to be fixed by the Commission for the purpose of reimbursing the United States for the costs of the administration of this part", amounts to an unconstitutional delegation by Congress of its power to tax and fails to provide standards for fixing the amount to be assessed and is void; (2) that the electric power developed and sold by the District is "sold to the public without profit" within the meaning of the exemption provision of the Section, and the District is therefore entitled to "enjoy [its license] without charge", and (3) that the District is also entitled to "enjoy [its license] without charge" because its electric power is "used" by it for "municipal purposes" within the meaning of the exemption provision of the Section.

The decision of the Commission against the District was by the majority of three, two members dissenting.[5]

1. Although the Commission is not empowered to and therefore declined to pass upon the constitutionality of the requirements imposed upon it by Section 10(e) in respect to fixing and compelling the payment of reasonable charges by its licensees,[6] it is not contended that this court is subject to such limitation of authority, and we must consider the attack made by the District against the constitutionality of the Section.

But our first inquiry is whether the District is a proper party or in position to raise the constitutional question it has presented.

When the Act was passed in 1920 the issuance of licenses under it was conditioned by the Act upon the payment of reasonable annual charges to be fixed by the Commission for the purpose of reimbursing the United States for the costs of administration of the Part of the Act and it was provided that each license should be conditioned upon acceptance by the licensee

---

[1] 16 U.S.C.A. § 796(7).

[2] 16 U.S.C.A. § 797(e).

[3] 16 U.S.C.A. § 825l.

[4] Applications filed under Section 11.-24 of Commission's Rules of Practice and Regulations.

[5] Opinion with dissenting opinions filed In the Matter of the Central Nebraska Public Power and Irrigation District Project No. 1417, July 12, 1946.

[6] Todd v. Securities and Exchange Commission, 6 Cir., 137 F.2d 475.

of the conditions of the Act to be expressed in the license[7] and undoubtedly in view of the Act as a whole the conditions were a substantial inducement to the Act's passage. The Commission shortly after the passage of the Act in 1920 established the formula for the required charges of one cent per horsepower installed capacity, plus two and one-half cents per thousand Kilowatt-hours for energy generated by the project and reported to Congress as required by Section 4(d) of the Act, 16 U.S. C.A. § 797(d). So that when the District applied to the Commission in 1937 for its Federal Power license the rate of charges had been established for some seventeen years and the District in accepting the license undertook to comply with the prescribed conditions with full knowledge and understanding of the obligation. On the faith of its assumption of the obligations and compliance with the Act it has obtained grants of some sixteen million dollars and loans aggregating some twenty one millions from the United States with which it has constructed its works and has been enabled to operate, and it has received and is receiving the benefits of the Act and the Commission's administration. It did not contend before the Commission and may not here contend, that the rate of charges fixed by the Commission is not reasonable or that it is higher than required by the Act. Neither does it contend that the charges are not such as the Congress was empowered to impose. The ground of the attack narrows itself down to this, that the Congress instead of empowering the Commission to ascertain and report to it a rate of charges within the limits of costs of administration to be offered to applicants for a license and applied to them as one of the terms of the grant of the privileges of the license, should itself have fixed the charges as a tax. As the Commission certainly had no power to issue the license to the District except upon the conditions prescribed in Section 10(e), the District's contention in effect denies the Commission's power to issue the license it accepted. Thus the District seeks to assail in these proceedings the very section of the Act that conditions the license upon which it bases its assertion of rights in the proceedings. We think that it cannot in the same proceeding both assail the section and rely upon it.

We do not think it necessary to decide whether the standard set for the Commission's determination of annual charges to be required of licensees would be a sufficient standard to measure a tax of which the assessment was delegated to the Commission, but we hold that the licensee which applied for license after a rate of annual charges duly reported to Congress had been uniformly effective for many years, obligated itself to pay them and received vast grants and loans in consequence, cannot be heard to assail the validity of the section of the statute under which the rate of charges was originally established in these proceedings in which it as licensee invokes the power of the Commission to apply to it as licensee the exemption clauses of the same section. Pierce Oil Corporation v. Phœnix Refining Co., 259 U.S. 125, loc. cit. 128, 42 S.Ct.

---

[7] "Sec. 6. * * Each such license shall be conditioned upon acceptance by the licensee of all of the terms and conditions of * * * this act and such further conditions, if any, as the Commission shall prescribe in conformity with * * * this act, which said terms and conditions and the acceptance thereof shall be expressed in said license. * * * ".

Article 15 of the District's license reads as follows: "Article 15. Subject to the provisions of Section 10(e) of the Act, including the proviso relating to the exemption from payment of annual charges of municipalities distributing power from a licensed project to the public without profit, the Licensee shall pay to the United States as reimbursement for the costs of administration of Part I of the Act, an annual charge of one (1) cent per horsepower on 96,500 horsepower, authorized installed capacity, plus two and one-half (2½) cents per thousand kilowatt-hours for energy generated by the project during the preceding fiscal year ended June 30. Payment by the Licensee of such annual charges shall be made to the United States within 30 days from date of statement rendered by the Commission. A penalty may be imposed pursuant to the provisions of Section 17 (b) of the Act for delinquency in payment."

440, 66 L.Ed. 855; Grand Rapids & Indiana R. Co. v. Osborn, 193 U.S. 17, loc. cit. 29, 24 S.Ct. 310, 48 L.Ed. 598; Hurley v. Commissioner of Fisheries, 257 U.S. 223, loc. cit. 225, 42 S.Ct. 83, 66 L.Ed. 206; Booth Fisheries Co. v. Industrial Commission, 271 U.S. 208, loc. cit. 211, 46 S.Ct. 491, 70 L.Ed. 908; United States v. Golden Gate Bridge and Highway Dist. of California, D.C., 37 F.Supp. 505, loc. cit. 510, affirmed Golden Gate Bridge and Highway Dist. v. United States, 9 Cir., 125 F.2d 872, certiorari denied, 316 U.S. 700, 62 S.Ct. 1298, 86 L.Ed. 1769. Cf. Buck v. Kuykendall, 267 U.S. 307, loc. cit. 316, 45 S.Ct. 324, 69 L.Ed. 623, 38 A.L.R. 286; Frost v. Corporation Commission, 278 U.S. 515, loc. cit. 527, 49 S.Ct. 235, 73 L.Ed. 483; St. Louis Malleable Casting Co. v. George C. Prendergast Co., 260 U.S. 469, loc. cit. 472, 43 S.Ct. 178, 67 L.Ed. 351; Daniels v. Tearney, 102 U.S. 415, loc. cit. 421, 26 L.Ed. 187; Women's Kansas City St. Andrews Society v. Kansas City, Mo., 8 Cir., 58 F.2d 593, loc. cit. 606.

2. The contention of the District that the electric power developed and sold by it is "sold to the public without profit" is based on the nature of the District as a "municipality" operated in the public interest and forbidden to realize private profit. It is organized under laws of the State of Nebraska which empower it to sell its electric power but require that the ultimate net proceeds shall inure to public and not to private benefit. Though it received from its sales of electric power to the public during the annual periods in question amounts in excess of the cost of operation, it contends that the power was "sold * * * without profit" because the excess will ultimately inure under the laws to the benefit of the public within the areas of its operations.

The practice of the Commission has always been to allow exemptions from annual charges only to those State and municipal licensees whose annual accountings disclose no net balance of receipts over costs for the period. It has made no distinction in accounting requirements between the municipal licensees like the District whose gains from operation inure ultimately to the public benefit, and others,

and its position has been and is, that it is the intent of the Act to require annual charges from all licensees whose sales of electrical power result in an excess of receipts over costs during the annual period as shown by the accountings. It denies any controlling effect in considering exemption to municipal licensees to their ultimate application of the profits from sales of power to the public benefit.

Whatever incongruity there may be etymologically in speaking of "profits" in connection with sales of power by a municipality operated in the public interest for the public benefit, the fact is that thousands of such corporate entities are in operation throughout the country now, and the structure and public operation of these entities is assimilated in so many respects to private corporate operation that it is usual and common practice to apply to them a test of profit and loss as an accepted yardstick in measurement of their efficiency and success or lack of it, and of their credit and standing. The question whether one of them is operating at a profit or loss is put constantly from many angles and causes no confusion or misunderstanding as to its intent. Traditionally the concept of an entity doing business such as producing and selling includes as one of the incidents that it is making profits or losing money in given periods, and study of the Nebraska law governing the objects, organization and functioning of the petitioner in this case shows plainly that the concept including that aspect was constantly in the legislative mind. As stated by the Commission, "District's Enabling Act clearly contemplates that the public power districts therein authorized should be profit-making governmental enterprises" in the ordinary sense of the term. "Section 70-713 of that Act requires that the [electric power] rates shall be 'so adjusted as * * * to confer upon the users and consumers * * * the benefits of a successful and profitable operation and conduct of the business of the District'. Section 70-709 dealing with the power to borrow or incur indebtedness prescribes that such indebtedness 'shall be payable solely from revenues, incomes, receipts and profits derived by the Dis-

trict from its operation and management * * *', whereas Section 70-712 limiting hypothecation of property specifically authorizes the pledging of 'revenues, incomes, receipts or profits to secure the payment of indebtedness to the federal government'." The concept of such an entity as the District doing business at a profit or loss is entirely familiar to the courts. See Twitchell v. City of Spokane, 55 Wash. 86, 104 P. 150, 24 L.R.A.,N.S., 290, 133 Am.St.Rep. 1021; Pikes Peak Power Co. v. City of Colorado Springs, 8 Cir., 105 F. 1.

Nor do we find anywhere in the Federal Power Act any expression indicating that Congress regarded the municipal power development agencies as entities unable to make profits. They are dealt with as entities engaged in business, required to keep accounts as such, and therefore through their accountings made amenable to the profit and loss test universally accepted in the business world.

The words of limitation of this exemption for State and municipal licensees in Section 10(e) are not directed to the character of the public licensee to be exempted but solely to its sales to the public. A system of accounting having been provided to disclose whether or not the power produced was sold at a profit during an annual period, the exemption was limited "to the extent such power is sold * * * without profit."

■ It must be conceded that the arguments forcefully presented for the District demonstrate that the yardstick of profit or loss from sales of power prescribed by Congress to measure liability for or exemption from annual charges may not be in all aspects and incidents the best means of advancing the broad object of the Act to aid in the development of power from natural resources. Only the agencies that show profits (presumably the efficient) are required to pay and those which lose (perhaps the inefficient) are excused. Also the limitations of the exemption may offer inducement to sell the power to the public too cheap and in that way jeopardize the government's grants and loans. Also it is practically impossible to operate a district so as to come out exactly even, without either profit or loss, and so to obtain the exemption. But we think that in substance the arguments for the allowance of the exemption to this District, which does receive an excess of income from sales to the public, go to the policy of the statute which is not for the courts.

■ The situation as to this exemption provision is that it has consistently over a period of a quarter of a century been understood by the Commission and by the Congress to mean that all municipal licensees like this District, whose accountings with the Commission show profits from their sales of power to the public for the annual periods, are required to pay the prescribed charges. The District obtained its license in that situation and recognized the obligation during its first years of operation and though it is not now estopped to make its contention, this court may not upset the long settled administration of the Federal Power Act in this vitally important phase without clearly compelling reasons. Those relied on are properly to be addressed to the Congress and have not persuaded that the administrative interpretation is without sound support in the Act or is wrong.

3. In passing upon the District's claim to be allowed exemption from the charges on the ground that the power developed by it is "used for municipal purposes" the Commission said: "If the claim of District that the 'sale' of power, being a 'municipal purpose', entitles it to the exemption, the alternative grounds for exemption in Section 10(e) would overlap and conflict, for the first ground limits the exemption to sales to the public without profit and the second, under District's argument, allows the exemption for all sales irrespective of profit. We cannot attribute such a purpose to the statute, but rather are of the opinion that Congress intended that the two grounds of exemption should be mutually exclusive and that claims for exemption predicated on sales of the energy must meet the further condition that the power must reach the consumer without profit having been made on any sales. Moreover, the reference in the second ground for exemption to a use 'by such State or municipality' clearly is a refer-

ence back to the State or municipal licensee operating the project and limits the exemption to instances where such licensee retains the power and uses it for its own purposes. Such retention and use by a municipal licensee precludes disposition to others."

The District complains that in these conclusions the Commission failed to mention Section 3(7) of the Act defining municipality as meaning "a city, county, irrigation district, drainage district, or other political subdivision * * * of a State competent under the laws thereof to carry on the business of developing, transmitting, utilizing, or distributing power" and the laws of the State of Nebraska making the sale of power one of the purposes within the powers granted to the District.

The conclusions of the Commission appear to give fair recognition to sales of power by the District "being 'a municipal purpose'", but the Commission declined to construe the words "used by * * * [the] municipality" in Section 10(e) in isolation and held that consideration of the exemption proviso in its entirety in connection with the Act was necessary to ascertainment of the true legislative intent. And in that we agree.

■ The proviso of Section 10(e) does not relate to or allow exemption to any other than State and municipal licensees and the assumption is inherent as to them that whatever they properly do with their power is a municipal function performed for the public benefit. The proviso prescribes the particular conditions and the extent to which these public licensees may enjoy their licenses without charge. In addition to their public nature, a condition common to them all is that they are all confronted with the necessary alternative of selling or not selling the power they produce (it will not keep), and it is evident that the exemption proviso here has been framed with these alternative possibilities in view. It prescribes exemption conditions for the municipal power licensees solely and entirely on the basis of which of the alternatives the public licensee follows in disposing of its electric product. The possible alternative ways of disposal of their power fix the two categories in which those claiming the right to the exemptions which Congress has based solely on the manner of disposal of electric power must be treated. Either the licensees sell it (as the District does), and then the condition for exemption is that their sales to the public must be without profit as above discussed, or they do not sell it. If they do not sell it but retain it, then they may come within the category of those public licensees covered by the words of the proviso which "use it for municipal purposes" and are in that way distinguished from those who sell it.

That construction of Section 10(e) as made by the Commission conforms to the legislative intent shown by the form and wording of the statute.

As we find the Commission's refusal to allow the claimed exemptions and its requirement that the charges assessed be paid by the District are in accord with the Act, the orders of the Commission are sustained.