IRA McCORD

*v.*

EUGENE S. PIKE *et al.*

*Filed at Ottawa June 17, 1887.*

1. PARTIES—*right of tax-payer to interpose to prevent the wasting of public property or misappropriation of public funds.* If an unjust and illegal burden is attempted to be imposed on the tax-payers by county authorities, or the money or property of the county, to replace which taxes must be levied, is being wasted or squandered, any tax-payer will have such a direct interest as will authorize him to maintain a bill to enjoin the threatened burden or illegal act. · There is nothing in *Chicago* v. *Union Building Association*, 102 Ill. 379, contrary to this rule.

2. COUNTIES—*mode of conveying real estate—powers and duties of the county authorities in respect to the disposition of public property.* A county board, under the statute, may authorize any officer or member to execute and deliver all deeds, etc., necessary in selling real estate belonging to the county; and such deeds, if made without fraud or collusion, will be binding upon the county.

3. If a county board attempts to sell and convey real estate of the county for less than its value, or to accept an offer of one to purchase the same at a sum less than another offer, or less than they know can be had, such board will be guilty of a breach of trust and of a fraud, and may be enjoined from the making and delivery of the deed, at the suit of a resident tax-payer.

4. A county board directed one of its committees to offer certain real estate of the county for sale at the best price attainable, not less than $55,000, which had been offered. A bid $50,000, and B $51,000, and C $55,000, the latter failing to accompany his bid with a check for a part of the price, but did so before the matter was closed by the board, which accepted B's bid: *Held*, that a court of equity would enjoin the delivery of any deed to B on his bid, at the suit of a tax-payer.

5. A county board has no right to give away any property or money of the county, or to dispose of its property for a sum less than its known value, or than is offered for the same.

6. A county board, acting in respect to a ministerial matter affecting the interest of the county, can not, by a system of rules of its own making, preclude reconsideration and correction of its erroneous action, whether resulting from haste and want of consideration, or from intentional wrong.

WRIT OF ERROR to the Superior Court of Cook county; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. Barnum, Rubens & Ames, for the plaintiff in error:

A tax-payer of a municipal corporation can not maintain an action against the corporation and its grantee, to avoid a sale and conveyance of real estate illegally or improvidently made. The Attorney General, alone, can sue. *Chicago* v. *Building Association,* 102 Ill. 398; *Roosevelt* v. *Draper,* 7 Abb. Pr. 108; 23 N. Y. 108; *Fitzgerald* v. *Harms,* 92 Ill. 376; *Davis* v. *Mayor,* 2 Duer, 668.

Mr. Wallace Heckman, and Mr. Sidney Smith, for the defendants in error:

Individuals injuriously affected by illegal acts of municipal authorities may invoke a court of equity. *Railroad Co.* v. *People,* 92 Ill. 170.

A bill by tax-payers to enjoin the municipal authorities from misapplying the funds of a county, is the proper remedy: As, to enjoin unwarranted contributions to build a toll bridge—*Colton* v. *Hanchett,* 13 Ill. 615; or to enjoin a gratuitous appropriation to a judge—*Perry* v. *Kinnear,* 42 Ill. 161; or to restrain the collection of a tax imposed for the purpose of refunding moneys which had been previously paid by individuals to raise volunteers for the army—*Drake* v. *Phillips,* 40 Ill. 389; or to enjoin the illegal issuing of bonds to a railway company—*Prettyman* v. *Supervisors,* 19 Ill. 406; or to enjoin the collection of taxes for fraudulent purposes—*Leitch* v. *Wentworth,* 71 Ill. 147.

In the case of *Leitch* v. *Wentworth,* the court hold, that "upon the point of jurisdiction the allegation of fraud in levying the tax complained of, for an unauthorized purpose, was sufficient to give the court jurisdiction." See, also, *Fitzgerald* v. *Harms,* 92 Ill. 372; *Harding* v. *Railroad Co.* 65 id. 90; *Scholl* v. *Bowman,* 62 id. 321; Dillon on Mun. Corp. secs. 682, 731-733; High on Injunctions, 462, 783, 784; *Devine* v. *County Comrs.* 84 Ill. 590.

Mr. Justice Scholfield delivered the opinion of the Court:

This was a bill in equity, exhibited in the Superior Court of Cook county, by Eugene S. Pike, John H. Dunham, and others, citizens and tax-payers of Cook county, on behalf of themselves and all other tax-payers of that county, against Ira McCord and the board of county commissioners of the county of Cook, praying that the execution and delivery of a certain deed be enjoined. Answers were filed to the bill, and McCord filed a cross-bill against the board of county commissioners and the complainants, praying that specific performance of a contract to purchase the property, the execution of the deed for which was sought to be enjoined by the original bill, be decreed. Answers were filed to the cross-bill, and replications were filed to the several answers. On hearing, the court decreed that McCord's cross-bill be dismissed, and that the board of county commissioners be perpetually enjoined from executing and delivering the deed described in the original bill. The present writ of error is prosecuted by McCord alone.

The first question to be considered is, will a bill in equity, by tax-payers, lie in a case like the present? The contention of plaintiff in error is, that such a bill will lie only in the name of the Attorney General, or of the State's attorney of the county, as the representative of the public. In some States, and notably in New York, this is the rule. (See *Roosevelt* v. *Draper*, 23 N. Y. 108.) But the ruling in this State is different. It is here held, that where an unjust and illegal burden is being imposed on the tax-payer by the municipality, or the money or property of the municipality, to replace which taxation must be levied, is being wasted or squandered, the tax-payer has such a direct interest that a bill to enjoin the threatened burden will lie. *Colton* v. *Hanchett*, 13 Ill. 615; *Prettyman* v. *Supervisors*, 19 id. 406; *Perry* v. *Kinnear*, 42 id. 160; *Drake* v. *Phillips*, 40 id. 389; *Chestnutwood* v. *Hood*, 68

id. 132; *Devine* v. *County Commissioners,* 84 id. 590; *Mayor of Springfield* v. *Edwards,* 84 id. 626; *Railroad Co.* v. *People,* 92 id. 170; *Leitch* v. *Wentworth,* 71 id. 147.

It seems to be supposed that something was said in *Chicago* v. *Building Association,* 102 Ill. 379, contrary to this rule. It is very certain that was not intended, and, we think, if the question there really under consideration be kept in view, and it be also kept in view that the language employed was with reference to that question only, it will appear that nothing there said can reasonably be held to have the effect of announcing a different rule from that sustained by the cases cited *supra.* The bill there was by a private property owner, to enjoin the vacating of a part of a street in a city. This property owner's property was remote from the part of the street proposed to be vacated. It was not shown that the revenues of the city would be impaired by the vacation, or that the vacation would necessitate the opening of streets elsewhere, at the expense, in part, of this tax-payer, or that any pecuniary burden would, in any way, result to the tax-payers of the municipality in consequence of this vacation. The injury to the complainant was precisely that sustained by the entire public, in common with it, except in degree. In referring to the New York cases, and to other cases of like ruling, and in immediately afterwards quoting from Dillon on Municipal Corporations, the purpose was, simply, to show that we had, in *Colton* v. *Hanchett,* and the other cases cited from this court, gone beyond many respectable courts, and to the extreme limit fixed by any court for allowing a bill to be filed by a tax-payer enjoining municipal action, and hence, that since that case did not fall within the doctrine of our previously decided cases, there was no ground upon which it could be rested.

The next question is, does the evidence prove sufficient of the material allegations of the bill to sustain the decree? In our opinion it does. The property in controversy is known

as block No. 2, of re-subdivision of reform school property, and belonged to the county of Cook. Section 7, of article 10, of the constitution, provides that "the county affairs of Cook county shall be managed by a board of commissioners of fifteen persons." Section 62, chapter 34, of the Revised Statutes of 1874, provides that the board of commissioners of Cook county shall exercise the same power as boards of supervisors in other counties. And section 16, of chapter 30, provides that "the county board may authorize any officer or member to execute and deliver all deeds, etc., necessary in selling real estate belonging to the county; and that such deeds, * * * if made without fraud or collusion, shall be obligatory upon the county."

It seems that one Warfield had made a proposition to the board to give $52,000 for this property, and this was referred to a committee called the "joint committee on finance and public service." Thereupon, on the 24th of August, 1885, Augustus French, a real estate broker, proposed to this committee to buy the property and pay $55,000 for it. On the same day, the committee submitted the offer of French to the board, and reported, recommending that the committee be directed to offer the property for sale at the best figures attainable, not less than $55,000, and this report was adopted. On the 19th of October, 1885, W. H. Colvin made an offer of $50,000 for the property, accompanying his offer with a check. for $50,000, and on the same day Ira McCord offered $51,000 for it, accompanying his offer with a check for $10,000. French, on the same day, made a written offer to the board of $55,000 for the property, accompanying his offer with no check.

The bill, among other things, contains allegations "that no bids were received by said joint committee or by said board, other than those above mentioned; that neither of said bids made by others than said French, fell within the scope of the resolution and action of said board; that each of said

bids was less than the $55,000 offered by French, and the lowest price at which the same could be sold in accordance with such action; that said board, although under obligations to Cook county to obtain the highest price it could for said property, accepted the bid of Ira McCord, although the same was $4000 less than the bid of French for said property; that said board pretended to disregard the bid of French, for the reason that no check accompanied the same, but it is alleged no check or draft was requested or required by said board; that when said board intimated a desire that checks or deposits should accompany bids for such property, French immediately produced and tendered to the board a check for $10,000, on account of said purchase, but said board proceeded to declare the property sold to Ira McCord. It is charged that the pretended sale to McCord is not *bona fide,* but is collusive, and for the purpose of defrauding the county of Cook out of the full value of the property; that such action, and the sale of the property for $4000 less than the bid received therefor, as before stated, increases the burden of taxation upon the property of the complainants and other tax-payers of Cook county," etc.

We do not deem it necessary to recite the facts in evidence in full,—it is sufficient that we believe these allegations to be substantially proved. French, in fact, represented Eugene S. Pike. He was ready to pay $55,000 for the property. The board knew this, yet they professed to sell it to McCord for $51,000. This was a breach of trust, and a fraud upon the tax-payers, to the amount of $4000. It was not within the discretion of the board, for the board had no authority to give away property.

It is contended, with much plausibility and force, that French held back and did not promptly file his written offer, and that when he did file it he accompanied it with no check. All this is true; yet he did, before the bids were passed upon, present his bid in writing, and when thereafter notified that

a check was required, and before the board had adjourned its session or meeting, he presented Pike's certified check for $10,000. This was not a sale pursuant to a previous advertisement requiring sealed proposals,—it was a mere informal sale, in which there were no specific conditions precedent required before considering propositions. There was no necessity for haste, and even if, technically, the check should have accompanied the offer, it was but justice to require that the *bona fides* of the offer be investigated. No reason is disclosed why the previous resolution of the board to sell the property at a price not less than $55,000 was disregarded. No individual desiring to sell his own property would have acted as this board did. Before the board adjourned, the check was furnished, but counsel say it was then too late. But why too late? No contract was signed or deed executed. The board had but resolved (if honest) under a misapprehension, and it was not too late to recall that resolution.

The following appears in evidence as a transcript of the proceedings of the board:

After some business was transacted, irrelevant to the present question, "an offer of $55,000 for block two (2) of the reform school property was read, and, on motion of Commissioner Van Pelt, action thereon was deferred until after the transaction of the routine business." Then the transcript goes on with the routine business, and when we get to the sixth page, we find the joint committee on finance and education submitted the following:

"The chairman suggested that, as there were several bids for the property, they be read, and directed the clerk so to do.

"Commissioner McClaughrey moved that the offer of Ira McCord, of $51,000, cash, for the property, be accepted.

"Commissioner Senne protested against the consideration of propositions offering less than $55,000, as the action of the board did not authorize the receipt of bids for a less amount.

"Commissioner Van Pelt moved that action be deferred for one week. The motion was lost by the following vote:

"Yeas—Senne, Van Pelt, Wren, Ochs—4.

"Nays—Hannigan, Leach, Leyden, MacDonald, Patrick McCarthy, J. J. McCarthy, McClaughrey, Niesen, Wasserman—9.

"Commissioner Leach moved the previous question. Carried by the following vote:

"Yeas—Hannigan, Leach, Leyden, MacDonald, Patrick McCarthy, J. J. McCarthy, McClaughrey, Niesen, Wasserman—9.

"Nays—Senne, Van Pelt, Ochs—3.

"After debate, the bid of Ira McCord, of $51,000, was accepted by the following vote:

"Yeas—Hannigan, Leach, Leyden, MacDonald, Patrick McCarthy, J. J. McCarthy, McClaughrey, Niesen, Van Pelt, Wasserman—10.

"Nays—Senne, Wren, Ochs—3.

"Commissioner Leyden moved a reconsideration of the vote just taken. The motion to reconsider was laid on the table.

"Commissioner Leyden moved that the county attorney be instructed to draft a deed of the property to Ira McCord, in accordance with the terms of his proposal, and that the chairman of the board be authorized to sign the same, and that it be attested by the county clerk. Carried by the following vote:

"Yeas—Hannigan, Leach, Leyden, MacDonald, Patrick McCarthy, J. J. McCarthy, McClaughrey, Niesen, Van Pelt, Wasserman—10.

"Nays—Senne, Ochs, Wren—3."

And again: "Commissioner Senne offered a check for $10,000 to guarantee the fulfillment of the proposal of Augustus French for the purchase of the reform school property, but the chair decided, that as the property was sold by previous action of the board, the check could not be accepted.

"On motion, board adjourned to Monday, October 26, 1885, at 2 o'clock P. M."

It was shown, that, by a rule of the board, any member voting with the majority, or any member absent at the time a vote was taken, might move for a reconsideration at any time before the expiration of the next meeting of the board.

But even if there had been no such rule, a body acting in respect to a purely ministerial matter, as this body was here acting, could not, by a system of rules of its own making, preclude reconsideration and correction of its erroneous action, whether resulting from haste and want of consideration, or from intentional wrong.

An excuse for the delay of French in closing the trade with the committee, is found in the fact that the committee was endeavoring to get him to assume the payment of certain liens for special assessments, amounting to a considerable sum of money, and not within the contemplation of his offer. But it does not follow that the action of the board of commissioners was right, even if he was negligent and careless in what he ought to have done to entitle him to a conveyance. The question is not between French and the board,—the question is whether the board shall be allowed to sell, and McCord shall be allowed to buy, the property for $4000 less than another party is, within the knowledge of the board, at the time willing to pay for it.

Warfield's bid, as well as that of French, seems to have been arbitrarily disregarded. Trust property can not be arbitrarily or capriciously disposed of,—it must be sold for the most that it will bring in market.

McCord has no vested right to have this property on his bid. He did nothing and parted with nothing on the faith of the claimed acceptance of his bid before the filing of the bill.

The decree is affirmed.

*Decree affirmed.*