COPELAND *v.* LEATHERS, Solicitor-General.

August 29, 1949.

*Young H. Fraser* and *Ralph R. Quillian,* for plaintiff.
*Roy Leathers, Solicitor-General,* contra.

HAWKINS, Justice. (After stating the foregoing facts.) ■ The only grounds of demurrer argued and insisted upon in the briefs of counsel for the plaintiff in error are the general grounds, and ground 2 of the second demurrer.

The title of the act under which this proceeding was instituted (Ga. L. 1945, p. 326) is as follows: "An Act to license and regulate the operation of road houses, cabin camps, tourist camps and public dance halls; to provide for the registration of guests; to provide for inspection by State and county health officers; and to provide penalties for persons operating cabins, tourist camps, and road houses for immoral purposes or who violate other provisions of this act in restaurants, cafes, or places where food and/or drinks are sold."

The pertinent provisions of the act are substantially as follows:

Section 1. That every person engaged in the business of operating outside the corporate limits of any city or town in this State a tourist camp, cabin camp, tourist home, road house, public dance hall, or any other similar establishment, where travelers, transient guest, or other persons are or may be lodged, or operating restaurants, cafes, or places where food and/or drinks are sold to be consumed at said places, shall, before engaging in such business, apply for and obtain a license so to do from the County Commissioners or Ordinary of the County in which such business is to be carried on. Section 6 of the act is as follows: "Any person or persons occupying any room or rooms in a tourist camp, cabin camp, tourist home, road house, or any other similar establishment by whatever name called, shall register or cause himself to be registered before occupying the same, and if traveling by motor vehicle shall register at the same time the automobile license tag of such motor vehicle and the manufacturer's name of such motor vehicle, and no person shall write or cause to be written or, if in charge of a register, knowingly permit to be written in any register in any of the establishments herein named by other or a different name or designation than the true name or names in ordinary use of the person registering or causing himself to be registered therein, or the true name of the manufacturer of such motor vehicle or the correct license plate and number thereof. Every person to whom a license is issued under the provisions of this Act shall provide a permanent register for the purposes set forth herein." Section 17-A provides: "Upon application of any officer or citizen of the county wherein such establishment is located, the Superior Courts of the State of Georgia are hereby authorized to enjoin any licensee hereunder from further operating such business upon proof that such licensee has violated the provisions of this Act, or upon proof that the licensee has forfeited his license; and said Superior Courts, and the Judges thereof, shall likewise have authority to and shall enjoin, at the instance of any taxpayer or citizen, any person, firm, or corporation from further operating such business without first securing the license herein provided for."

The contention of the plaintiff in error, that section 17-A of the act (Code, Ann. Supp., § 52-314), under the provisions of which the present proceeding was instituted, is unconstitutional

because it contains subject-matter different from what is expressed in the title thereof and is, therefore, violative of article 3, section 7, paragraph 8 of the 1945 Constitution of Georgia (Code, Ann., § 2-1908), is without merit. By reference to the title of the act it will be seen that the purpose thereof is "to license and regulate the operation of road houses, cabin camps, tourist camps and public dance halls; to provide for the registration of guests . . and to provide penalties for persons operating cabins, tourist camps, and road houses for immoral purposes or who violate other provisions of this act in restaurants, cafes," etc. It is apparent from a reading of the act as a whole that its main purpose was to regulate the operation of tourist camps, and other businesses therein described and referred to, and the title of the act states that one of the purposes thereof is to provide penalties for the violation of certain of its provisions. The fact that no particular reference is made in the title to the penalty of injunction provided for in the body of the act does not render this provision of the act repugnant to the constitutional provision above referred to. This provision for enjoining the illegal operation of a business coming within the terms of the act is in entire harmony with the purpose of the act as stated in the title, and is one of the means by which the act is made effective. In *Pearson* v. *Bass,* 132 *Ga.* 117 (2) (63 S. E. 798), it is held: "The fact that an act provides for a penalty upon one coming within the provisions of the act, and that this penalty may be enforced by civil or criminal procedure, does not render the act itself obnoxious to the constitutional provision that no law shall pass which refers to more than one subject-matter." In *Morris* v. *State,* 117 *Ga.* 1 (1) (43 S. E. 368), it is held: "The act approved December 15, 1897 (Acts 1897, p. 119), is not, because in its body it prescribes penalties for violations of its provisions not referred to in the title but entirely harmonious with the main idea and purpose as expressed in the title, violative of article 3, section 7, paragraph 8, of the constitution of this State (Civil Code, § 5771), as relating to more than one subject-matter, or as containing matter different from that expressed in its title." See also *Durden* v. *State,* 161 *Ga.* 537 (131 S. E. 496); *Holland* v. *State,* 155 *Ga.* 795, 799 (118 S. E. 203); *Fite* v. *Henson,* 157 *Ga.* 679, 688 (122 S. E. 412); *Maner* v. *State,* 181 *Ga.* 254 (1), 258 (181 S. E. 856).

■ Nor is the petition subject to the general demurrer. From a reading of the act here under consideration, the conclusion is inescapable that it was the intent and purpose of the General Assembly to require the operators of tourist camps to provide a permanent registration whereby there would be positive and definite identification of the guests and the vehicles transporting them, so as to minimize the possibility of immoral practices at such places, and to place upon the proprietor the burden of seeing that every person occupying any room in a tourist cabin or camp registered his or her correct name, and if arriving by motor vehicle, to register at the same time the correct license tag of such motor vehicle and the manufacturer's name of such motor vehicle, and section 6 of the act makes it a misdemeanor for the person occupying the room to make, or for the person in charge of the register to knowingly permit a false registration, either of his or her name, or of the license tag, or of the manufacturer's name of the motor vehicle. It would render the act entirely without force or meaning to hold that the occupant of the room by merely failing to register either his or her name or license tag or the manufacturer's name of the motor vehicle, could defeat the purpose of the act, and that the owner or operator of such a business could avoid the terms of the act by simply closing his eyes and refusing to ascertain whether proper registration had been made, and to hold that only a false registration would constitute a violation of the terms of the act. Under the terms of this act, and of Code, Ann. Supp., § 52-112, every person operating such a business is required to provide, furnish, and keep on the premises a book or other permanent record or register for the registration of guests, and for the securing of the information prescribed by section 6 of the act (Code, Ann. Supp., § 52-308). The proprietor is thus made responsible for the register and is, by the terms of the act, placed in charge of the register. If he knowingly fails to secure from his guests the information required by the act, he has violated the terms thereof, for under section 14 (Code, Ann. Supp., § 52-9911) it is provided that "any person violating any of the provisions of this Act shall, upon conviction thereof, be guilty of a misdemeanor and shall be fined or imprisoned in the discretion of the court." Section 17-A (Code, Ann. Supp., § 52-314) provides that "the

Superior Courts of the State of Georgia are hereby authorized to enjoin any licensee hereunder from further operating such business upon proof that such licensee has violated the provisions of this Act." It is not required that the owner or operator of such business be himself in actual charge of the register. If his agents, servants, or employees are in charge thereof, and fail to secure from the occupants of the cabins or rooms the registration and information required by the statute, the owner or operator is responsible therefor, for Code § 4-309 provides: "Notice to the agent of any matter connected with his agency shall be notice to the principal"; and Code § 4-311 is as follows: "The principal shall be bound for the care, diligence, and fidelity of his agent in his business, and hence he shall be bound for the neglect and fraud of his agent in the transaction of such business." In *Prater* v. *Cox,* 64 *Ga.* 706 (1) it is held: "Actual notice to an agent of any matter connected with his agency is also actual notice to his principal, and is not merely constructive notice to the latter." See also *Wall Realty Co.* v. *Leslie,* 54 *Ga. App.* 560, 563 (188 S. E. 600), and cases cited. The petition stated a cause of action, and the trial court did not err in overruling the general demurrers thereto.

■ The defendant (now plaintiff in error) objected to the admission in evidence of the registration cards offered by the plaintiff upon the grounds: (1) It had not been shown that the defendant had knowingly permitted any false or incomplete entries to be made of such registration cards. (2) The cards themselves failed to show any violation of the law as embodied in the act of 1945, pages 326 et seq. (3) Upon the further ground that the acquisition of such registration cards by the solicitor-general under the circumstances of this case was in violation of the constitutional rights of the defendant as set forth in the fourth, fifth, and fourteenth amendments of the Constitution of the United States; that such evidence was and is inadmissible because the same was taken from the custody of the defendant without any authorization or consent and without any warrant, subpoena, or order of court for the acquisition of the same, two members of the grand jury of said County, together with a policeman of the Clayton County Police Department having ordered the defendant to surrender possession of

said evidence under such circumstances as to constitute coercion and duress; and that, by using said evidence thus illegally seized, the plaintiff was forcing the defendant to testify against himself in a quasi-criminal proceeding. (4) The statute provides that the person in charge of the register shall not knowingly permit to be written in this register any other or different name than the true name in ordinary use of the person registering, or the true name of the manufacturer of the motor vehicle, or the correct license plate and number thereof, and there being no evidence that the information on the cards introduced was incorrect, the statute did not penalize the person in charge of the register for the failure of the guest to put on the card all of the information required by the statute, and that the cards introduced simply showed an omission rather than an illegal entry. (5) There was no evidence to show that the defendant made said entries or authorized them to be made by any agent of the defendant, or was present at the time such entries were made. (6) The statute does not require the operator of a tourist camp to fill in the entries, but simply to furnish a permanent register for the use of guests.

Under the rulings made in the preceding divisions of this opinion, the 1st, 2nd, 4th, 5th, and 6th grounds of objection are without merit. As to the 2nd ground of objection, none of the cards contained the name of the manufacturer of the motor vehicle of the guests and none of them showed a complete registration of the license plate, for on neither of them is the State issuing the license plate shown. The 3rd ground of objection is controlled adversely to the contentions of the plaintiff in error by the provision of Code, Ann. Supp., § 52-112, that the book or other permanent record for the registration of guests shall be available at all times for inspection by any local county, State, or Federal peace or law-enforcement officer. The trial court, therefore, did not err in overruling the objections and in admitting the documentary evidence objected to.

■ It follows from what has been said above that the trial court did not err in restraining the defendant from further operating the tourist cabins commercially or for public use. However, the statute under consideration does not authorize the court to enjoin the owner from selling such premises, and to the extent

that the trial court restrained the defendant from selling his property the judgment is erroneous. Direction is given that the judgment of the trial court be so modified as to eliminate the restraint as to the sale of his property by the defendant.

*Judgment affirmed with direction. All the Justices concur, except Duckworth, C. J., and Head, J., who dissent.*