18869.   MALCOM *v.* WEBB, Solicitor-General, *et al.*

ARGUED FEBRUARY 15, 1955—DECIDED MARCH 14, 1955.

*William L. Gower, Harris & Gower, Newell Edenfield,* for plaintiff in error.

*Paul Webb, Harold Sheats, Paul Webb, Jr., Thomas B. Branch, Jr., William Hall,* contra.

*C. Baxter Jones, Jr., F. M. Bird, Allen Lockerman, Henry B. Troutman, Ernest P. Rogers, Randolph Thrower,* amici curiae.

HAWKINS, Justice. (After stating the foregoing facts.) ■ The plaintiff, Paul Webb, in his official capacity as Solicitor-General of the Atlanta Judicial Circuit, was not authorized to maintain the present suit. The solicitor-general's duties, insofar as civil litigation is concerned, are defined by statutes, Code §§ 24-2908 (5, 9, 10) and 72-202, which authorize him to prosecute or defend any civil action in which the State is interested, unless otherwise specially provided for; and he may collect by rule, order of court, or other legal means, all money due the State in the hands of any escheators, may collect all claims due the State which he may be ordered to do by the Comptroller-General, and may abate a public nuisance. The present suit does not come within any of these classifications, and a solicitor-general, as such, has no authority to bring or prosecute it. See, in this

connection, *State ex rel. Boykin* v. *Ball Investment Co.*, 191 *Ga.* 382 (12 S. E. 2d 574) ; *Boykin* v. *Martocello,* 194 *Ga.* 867 (22 S. E. 2d 790) ; *Webb* v. *Alexander,* 202 *Ga.* 436 (43 S. E. 2d 668). It was therefore error for the trial judge to sustain the plaintiffs' demurrer to the defendant's motion to strike the solicitor-general as a party plaintiff, but, under the rulings announced in division 3 of this opinion, this was not such harmful error as will require a reversal.

■ It was not error to sustain the plaintiffs' demurrer to the defendant's plea of estoppel by judgment based upon the decision of this court in *Malcom* v. *Fulton County,* 209 *Ga.* 392 (73 S. E. 2d 173). Even if it should be conceded that the present plaintiffs as citizens and taxpayers of the county are in privity with the County Commissioners and the county, the plaintiffs in that case (a decision of which question need not now be made), the issues involved in the two cases are not the same. The petition dealt with in *Malcom* v. *Fulton County,* supra, was based solely on the contention of the plaintiffs that the contract had not been executed in accordance with certain formalities, in that it was signed only by the Chairman of the County Commissioners, and not by all of the Commissioners; that it was not read in full by the County Attorney when he presented it to the Commission for consideration and action; because it was not read by the Commissioners themselves before it was acted upon; that it was incomplete in execution because the county's official seal had not been affixed thereto; that the contract upon which the defendant relied had never been delivered to him; and that it was unenforceable because it had never been recorded on the official minutes of the board. There was no allegation in that case, as there is in the present petition, that the Commissioners had fraudulently disposed of county property for a grossly inadequate price when they had knowledge of higher offers for the property, in violation of their duties as trustees of the county property, and of which facts Malcom had notice at the time he received the contract. No such allegation could have been made in the former case, initiated by the county through its County Commissioners, for one will not be permitted in a court of equity to take advantage of his own fraud. *Tanner* v. *Wilson,* 193 *Ga.* 211 (17 S. E. 2d 581) ; *Smith* v. *Nix,* 206 *Ga.* 403, 407 (2) (57 S. E.

2d 275); *McKinney* v. *Atkinson*, 209 *Ga.* 49 (70 S. E. 2d 769). Thus, even if it could be said that the decision in *Malcom* v. *Fulton County*, 209 *Ga.* 392 (supra), was such a final judgment as could have been the basis of a plea of estoppel by judgment (as to which question see Code §§ 70-401, 70-402; *United States Fidelity &c. Co.* v. *Clarke*, 187 *Ga.* 774, 2 S. E. 2d 608; Interstate Realty Co. *v.* Bibb County, 293 Fed. 721; Harrison *v.* Foley, 206 Fed. 57)—the present petition being based upon the alleged fraud of county commissioners in arbitrarily rejecting higher offers and disposing of county property to Malcom for substantially less than could have been obtained therefor, thereby rendering the contract and conveyance ultra vires and voidable, which was not an issue in the previous case—the judgment rendered therein is not binding in the present case, and furnishes no basis for a plea of estoppel by judgment. Code §§ 38-623, 110-501; *Sumner* v. *Sumner*, 186 *Ga.* 390 (197 S. E. 833); *Garmon* v. *Boozer*, 209 *Ga.* 570 (74 S. E. 2d 865).

■ We come now to the third question presented, and that is whether the original petition alleges, and whether the evidence sustains such a cause of action as would justify a court of equity in cancelling and rescinding a contract purporting to convey the county's timber to the defendant Malcom. In determining this question, we must consider and apply several principles of law. In the first place, we think there can be no question about the right of the plaintiffs Paul Webb and Carl Copeland, as citizens and taxpayers of Fulton County, to maintain the present action. This court has many times held that citizens and taxpayers of a county have such an interest in county property as will authorize them to seek to prevent an illegal disposition thereof. *Morris* v. *City Council of Augusta*, 201 *Ga.* 666, 669 (40 S. E. 2d 710), and cases there cited; *Barge* v. *Camp*, 209 *Ga.* 38, 43 (1) (70 S. E. 2d 360). In the second place, we are not here dealing with private property and a contract with respect thereto entered into between individuals, but with public property, and a purported contract between public officials on the one hand and an individual on the other. As to such dealings, the following principles of law are applicable: Code § 89-903 provides that "Powers of all public officers are defined by law, and all persons must take notice thereof. The public may not be estopped by the acts of

any officer done in the exercise of a power not conferred." In *Wood* v. *Puritan Chemical Co.*, 178 *Ga.* 229 (172 S. E. 557), it is held: "Persons dealing with a public officer must take notice of the extent of his powers at their peril." See also *Northington* v. *Candler*, 211 *Ga.* 410 (86 S. E. 2d 325), decided by this court February 16, 1955. In 43 American Jurisprudence 74, § 256, we find this statement: "Persons who deal with public officers are also held to a recognition of the fact that government agents are bound to fairness and good faith as between themselves and their principal." Under the law, the title to and the control of the property of Fulton County are in the hands of the Board of Commissioners of Roads and Revenues, and in so holding the title to the public property, and in controlling its use and in disposing of it, the Commissioners are acting as fiduciaries or trustees for the taxpayers and citizens of the county. Art. I, sec. I, par. I (Code § 2-101) of the Constitution of 1877, and of the Constitution of 1945 (Code, Ann., § 2-101), each provides that "Public officers are the trustees and servants of the people, and, at all times, amenable to them." In *Dorsett* v. *Garrard*, 85 *Ga.* 734, 737 (11 S. E. 768), this court, in dealing with a situation where county commissioners had undertaken the sale of certain property belonging to the county, after quoting the above provision of the Constitution of 1877, held: "As a trustee and servant of the people who owned this property which had been advertised for sale, it was the duty of Dorsett [one of the commissioners], as well as of the other commissioners, to exercise his best judgment and skill, and to do everything reasonably in his power to obtain the best price for the land. This duty was imposed upon them by law when they accepted the office, and it does not matter, in our opinion, whether they were to receive compensation from the county for this duty or not. The office was not forced upon them, but was voluntarily assumed. Their duties were the same whether paid for by the county or not. Having accepted the office, they were bound by the law and their oaths to discharge these duties to the best of their ability." In discussing the standard of conduct required of a trustee, Chief Justice Cardozo, speaking for the New York Court of Appeals, in Meinhard *v.* Salmon, 249 N. Y. 458, 464 (164 N. E. 545, 546, 62 A. L. R. 1), had this to say: "Many forms of conduct permissible in a work-

aday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. . . Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." In the instant case, the County Commissioners and all dealing with them were required to exercise the utmost good faith, fidelity, and integrity. Heilig Bros. Co. *v.* Kohler, 366 Pa. 72 (76 Atl. 2d 613); McCord *v.* Pike, 121 Ill. 288 (12 N. E. 259).

Until recorded on the minutes and delivery had been made with the intention of consummating the agreement, there was no contract or agreement binding on the county, for Code § 23-1701 provides that "All contracts entered into by the ordinary with other persons in behalf of the county shall be in writing and entered on his minutes." Where the fiscal affairs of a county have been vested in the hands of commissioners, this provision of the Code is applicable to contracts made in behalf of the county by commissioners. *Graham* v. *Beacham,* 189 *Ga.* 304 (5 S. E. 2d 775). In *Foy* v. *Scott,* 197 *Ga.* 138 (28 S. E. 2d 107), it is held that standing timber is realty, and a sale thereof must be in writing, and delivery of the writing is essential to the passing of title by such writing. To the same effect, see *Peacock* v. *Horne,* 159 *Ga.* 707, 724 (126 S. E. 813). In McCormick *v.* Oklahoma City, 203 Fed. 921, it is held that, where a bidder from past experience knew he would be required to enter into a written contract with a city for municipal improvements in case his bid was accepted, a mere vote of the city council to accept his bid and award contract to him, no written contract ever having been executed, was insufficient to show a valid and complete contract. And in The Law of Public Contracts by James F. Donnelly, page 353, Part IV, § 242, it is said: "Mere negotiations which contemplate a written contract, followed by a vote of the governing body to accept a bid, will not constitute a contract . . .

and may later be reconsidered." Thus, in order for Malcom to have a valid contract with the county, it was necessary that the contract be in writing and be entered on the minutes of the County Commission, and that it be delivered to him, and he was chargeable with notice of these requirements of the law. *Jones* v. *Bank of Cumming*, 131 *Ga.* 191 (62 S. E. 68); *Renfroe* v. *City of Atlanta*, 140 *Ga.* 81 (78 S. E. 449, 45 L. R. A. (NS) 1173); *Decatur County* v. *Roberts*, 159 *Ga.* 528 (126 S. E. 460).

In the instant case, it is alleged, and the uncontradicted evidence shows, that the County Commissioners voted to accept the Malcom offer of $30,500, plus 55,000 feet of lumber, plus the clearing away of laps and debris, and the chairman signed the contract around noon on October 4, 1950, at which time they had notice through their agents and employees of higher and better offers for the timber. Code §§ 4-309, 4-311; *Copeland* v. *Leathers*, 206 *Ga.* 280, 287 (56 S. E. 2d 530). However, the contract was not delivered to Malcom on October 4, after it was signed, but on October 10, 1950, after the Commissioners had received notice of higher offers for the property from others, and had attempted on October 6, to rescind their previous action, and return to Malcom the money paid by him, which he refused, and the suit dealt with in *Malcom* v. *Fulton County*, 209 *Ga.* 392 (supra), was filed and served upon Malcom, seeking to cancel the contract and restrain him from cutting and removing the timber, in which suit it was alleged, and Malcom thereafter had actual notice, that one Bomar had submitted a bid, supported by a certified check, to pay $45,000 for the timber, nearly fifty percent more than the price offered by Malcom. At this time the contract which had been signed by the Chairman of the County Commissioners had not been delivered to Malcom, the seal of the county had not been affixed thereto, and had not been recorded on the minutes of the County Commissioners, and remained continuously and completely in the custody and control of the Commissioners until February 7, 1951, at which time the writing was sealed and delivered to Malcom. Before this latter date, all of the Commissioners and Malcom himself had actual knowledge of other higher outstanding offers to purchase the timber. With knowledge of all these facts, it was a clear breach of duty, and therefore a legal fraud, for the Commissioners to undertake to

sell the timber to Malcom at a price far below that offered for it by other parties. To this effect see *Dorsett* v. *Garrard*, 85 *Ga.* 734 (supra), and *Collier* v. *Mayflower Apartments*, 196 *Ga.* 419 (26 S. E. 2d 731). In Heilig Bros. Co. *v.* Kohler, 366 Pa. 72, 77 (76 Atl. 2d 613), a case wherein the facts are very similar to those in the instant case, that court said: "It is conceded, as indeed it must be, that the Commissioners, acting in behalf of the Institution District, were fiduciaries. They were dealing with public property. The Commissioners and all dealing with them were required to exercise the utmost good faith, fidelity and integrity. The present situation is not one where a higher offer was made after a consummated bona fide sale. Here a much greater price was offered before the sale was made. . . In secrecy and with no convincing reason assigned for the inordinate haste the Commissioners sold the land to Reliance Manufacturing Company for $25,000. Insofar as the Commissioners of the Institution District are concerned, it was a clear breach of trust and a fraud for them to sell public land without the slightest effort to ascertain whether the greatly increased offer over the contemplated sale price was still good, especially after actual notice immediately prior to and during the execution of the deed. The above facts establish the Commissioners' negligence and wrongful conduct which ordinarily would require the setting aside of such an iniquitous transaction." The purchaser in that case, as Malcom does here, contended that it was a purchaser for value without notice and that it made the purchase in good faith. In ruling upon that contention, that court said: "When this appellee was dealing with commissioners, especially when engaged in selling public land, it was immediately put upon notice as to the powers and authority of such fiduciaries. . . Failure by a fiduciary to obtain the most advantageous price constitutes a breach of trust. . . If Reliance knew or should have known before the contract was consummated, that the board could have obtained a better price for the property and failed to do so, Reliance is not then a bona fide purchaser."

Another case very much in point is that of McCord *v.* Pike, 121 Ill. 288 (12 N. E. 259). There, as here, county commissioners by resolution voted to sell public property for a price less than was being offered by other prospective purchasers, and there,

as here, the commissioners sought to consummate the sale and convey the property after they knew of these higher offers. The Supreme Court of Illinois set aside the contract and enjoined any conveyance of the property to the would-be purchaser. At page 293 (12 N. E. 261), the court said: "He was ready to pay $55,000 for the property. The board knew this, yet they professed to sell it to McCord for $51,000. This was a breach of trust, and a fraud upon the taxpayers to the amount of $4,000. It was not within the discretion of the board, for the board had no authority to give away property. . . Trust property can not be arbitrarily or capriciously disposed of—it must be sold for the most that it will bring in market."

The principle relied on by Malcom, as stated in *State of Ga.* v. *Hiers*, 210 *Ga.* 348, 349 (80 S. E. 2d 308), that "payment in full of the purchase money, in this State, gives the purchaser a perfect equity, which is good title even at law, and is sufficient to support or defeat an action in ejectment," has no application to the present case. While the principle there stated is sound, as applied to transactions between individuals with unlimited capacity to contract, and dealing at arm's length, it can have no application where one of the contracting parties occupies a fiduciary relationship to the subject matter of the contract, with limited authority to contract with respect thereto, and the other party is chargeable with notice thereof. Code § 108-416 provides: "The purchaser from a trustee, with actual or constructive notice of the trust, shall hold as trustee for the beneficiaries; if the purchase is bona fide and without notice, the purchaser shall hold the property freed from the trust." Code § 108-423 provides: "All persons aiding and assisting trustees of any character, with a knowledge of their misconduct, in misapplying assets, are directly accountable to the persons injured"; and Code § 108-425 provides: "When assets are misapplied and can be traced in the hands of persons affected with notice of the misapplication, the trust shall attach to the assets, and equity will aid in restoring them to their legitimate purpose." See also *Georgia Railroad &c. Co.* v. *Liberty National Bank &c. Co.*, 180 *Ga.* 4 (4) (177 S. E. 803); *Holliday* v. *Jackson County*, 121 *Ga.* 310 (48 S. E. 947); *Douglas* v. *Austin-Western Road Machinery Co.*, 173 *Ga.* 386 (160 S. E. 409); *Griffin* v. *Maddox*, 181 *Ga.* 492 (182 S. E. 847).

Nor is the case of *Semmes* v. *Mayor &c. of Columbus*, 19 *Ga.* 471, controlling here, as contended by counsel for the plaintiff in error. Much that is said in the opinion in that case was unnecessary to a decision of the question there presented, which was simply whether the trial judge had grossly abused his discretion in refusing to grant an interlocutory injunction on conflicting evidence. And an even more controlling reason why that case is not applicable here is that the decision there was rendered prior to the adoption of the Constitution of 1877, which first contained the provision that "Public officers are the trustees and servants of the people" (Code § 2-101), and that decision, if construed to hold to the contrary, must yield to the Constitution.

Applying the foregoing principles of law to the allegations of the petition in the instant case, it stated a cause of action, and the trial judge did not err in overruling the demurrers thereto. The evidence demanded a verdict in favor of the plaintiffs, and it was not error to deny the motion for judgment notwithstanding verdict and the defendant's motion for a new trial.

*Judgment affirmed. All the Justices concur.*