**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be**
*physically received* **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**September 27, 2017**

# In the Court of Appeals of Georgia

A17A1824. TYSON et al. v. SCOTTSDALE INDEMNITY
    COMPANY.

ANDREWS, Judge.

Howard Tyson sustained serious injuries after he was hit by a tree limb. He filed suit against Hank Rowe d/b/a Shellmar Tree Service ("Shellmar"), who filed a third-party complaint against Shellmar's general commercial liability insurer, Scottsdale Indemnity Company. The trial court granted summary judgment to Scottsdale, finding that Shellmar's insurance policy excluded coverage to Tyson because he was working for Rowe at the time of the accident. Tyson and Rowe appeal, contending that the trial court erred in granting summary judgment because (1) the policy did not exclude Tyson; (2) there were genuine issues of material fact regarding whether Rowe had knowledge of the policy exclusions and whether

Scottsdale made representations to Rowe that the policy covered "anyone," such that the policy should have been reformed; and (3) the policy did not comply with provisions of Georgia's Surplus Line Insurance Law (OCGA § 33-5-20 et seq.). For the reasons that follow, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

*Gayle v. Frank Callen Boys & Girls Club, Inc.*, 322 Ga. App. 412, 412 (745 SE2d 695) (2013).

So viewed, the record shows that Rowe owned and operated Shellmar. Beginning in 2012, Tyson began working for Rowe by raking, piling limbs, and cleaning up job sites after trees were taken down. Tyson did not work for Rowe full-time; his hours varied depending on how much work Rowe had available. On September 11, 2014, Rowe and Tyson, along with other workers, traveled to Sea Island in Shellmar trucks to remove several trees and all tree debris from the yard of a house under construction. Tyson's job was to help remove limbs and debris after the

2

trees were taken down. As Rowe and the others were taking down the last tree, Tyson was standing off to the side, a safe distance away from the tree, as was a requirement of his job. However, he was still in the yard. Although no one saw what happened, Tyson was struck in the neck by a large pine limb. As a result of the accident, Tyson is a quadriplegic.

Tyson and his partner filed a claim against Scottsdale, which was denied. They then filed suit against Rowe, setting forth claims for negligence, strict liability, breach of contract, and loss of consortium. Rowe answered and asserted a third-party complaint against Scottsdale on the ground that Scottsdale improperly denied coverage. After a hearing, the trial court granted Scottsdale's motion for summary judgment. This appeal follows.[1]

---

[1] Tyson and Rowe have each filed a brief, alleging identical enumerated errors, as set forth above, and almost identical arguments in support of their claims of error. Rowe, however, has also included additional arguments challenging the enforceability of the policy exclusions and asserting that Scottsdale had a duty to defend Rowe in Tyson's suit. But this Court "has jurisdiction to decide only those issues fairly raised by an enumeration of error[.]" *Coweta County v. Simmons*, 269 Ga. 694, 695 (507 SE2d 440) (1998); accord *Williams v. State*, 320 Ga. App. 831, 837 (5) n.23 (740 SE2d 766) (2013); *Veolia Envtl. Servs. v. Vick*, 309 Ga. App. 658, 660 (2) (711 SE2d 40) (2011) (noting that "appellants may not use their brief to expand their enumeration of errors by challenging rulings not mentioned in the enumeration of errors"). Thus, we will only decide the issues raised in Tyson and Rowe's enumerations of error, not Rowe's other claims. Furthermore, in Scottsdale's brief, without citing to any case law or statutory authority other than Court of Appeals Rule

1. Tyson and Rowe contend that the trial court erred in determining that the policy excluded Tyson from coverage because he was not engaged in a task at the time of the accident, but rather standing away from the tree-cutting area, speaking on the telephone. We disagree.

> In construing an insurance policy, we begin, as with any contract, with the text of the contract itself. One of the most well-established rules of contract construction is that the contract must be construed as a whole, and the whole contract should be looked to in arriving at the construction of any part.

*Royal v. Ga. Farm Bureau Mut. Ins. Co.*, 333 Ga. App. 881, 882 (777 SE2d 713) (2015).

The commercial general liability insurance policy issued by Scottsdale to Shellmar provided up to $1,000,000 in bodily injury coverage. However, the policy excludes coverage to bodily injury to "an employee, leased worker, temporary worker, or volunteer worker of any insured" or "[a]ny contractor, subcontractor, sub-subcontractor or anyone hired or retained by or for any insured" if the injury "arises

23 (a), which sets out the deadlines for filing briefs, Scottsdale asserts that this Court should not consider Rowe's brief at all because Rowe did not file a separate notice of appeal or seek this Court's permission to file or a brief, and his brief was filed more than 20 days after the appeal was docketed. However, given the fact that Tyson and Rowe set forth identical enumerated errors, we need not address this assertion.

4

out of and in the course of their employment or retention[.]" (Punctuation omitted.) An "employee" is defined to include a "leased worker," (a worker leased by a labor leasing firm) but not a "temporary worker" ("a person who is furnished to you to substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions").

Pretermitting whether or not Tyson was a Shellmar "employee" as defined by the policy, the undisputed evidence shows that he was "hired or retained" by Shellmar to clean up tree debris on the day of the accident. Indeed, Tyson testified that he was being paid to work at the time the tree fell.

Given this evidence, the relevant inquiry is whether Tyson's injuries arose out of or in the course of his employment or retention. As our Supreme Court has explained,

> Georgia courts have not construed the terms "in the course of" and "arising out of" employment outside the context of workers' compensation law. However, the same reasoning used in workers' compensation cases has been held to be applicable to general liability cases.

*SCI Liquidating Corp. v. Hartford Fire Ins. Co.*, 272 Ga. 293, 294 (526 SE2d 555) (2000). And in the context of workers' compensation, Georgia courts have defined

5

"arising out of" as "a causal connection between the conditions under which the work is required to be performed and the resulting injury." Id. "In the course of" employment has been defined as "relating to the time, place and circumstances under which injury takes place." Id. (punctuation omitted).

And although there was evidence that Tyson was using his phone and otherwise on a break at the time of the accident, under workers' compensation law, "[a]n injury to an employee occurring during working hours and on the employer's premises ordinarily and presumptively will be considered as arising out of and in the course of employment[.]"[2] *Miles v. Brown Transp. Corp.*, 163 Ga. App. 563, 564 (294

[2] "An exception . . . however, has been carved out for injuries occurring during a regularly scheduled lunch break or rest break and at a time claimant is free to do as she chooses." *Miles*, 163 Ga. App. at 564. Even assuming Tyson was on a momentary break at the time of the accident, there is no evidence in the record showing that his break was regularly scheduled or that he was free to do as he chose until the others finished felling the last tree so he could continue his clean-up duties. Cf. id. (holding that an employee who fell on stairs at her workplace as she was in the process of leaving to take a lunch break had an injury arising out of and in the course of her employment because the precise time of her lunch break was not scheduled and she often performed job-related duties during her lunch break); *Twin City Fire Ins. Co. v. Graham*, 139 Ga.App. 318, 319 (228 SE2d 355) (1976) (holding that workers' compensation covered an injury that occurred during an operating room nurse's break, where the nurse had no scheduled breaks, and could take breaks only when the operating room activities permitted); *Edwards v. Liberty Mut. Ins. Co.*, 130 Ga. App. 23, 24 (2) (202 SE2d 208) (1973) (an injury sustained by an employee during an unscheduled bathroom break was covered by workers' compensation, because "the time [was] not released to [the employee] as free time during which he may do as he

SE2d 734) (1982). Here, the undisputed evidence shows that Tyson was in the yard, waiting a "safe" distance away, as he was required to do, when the branch fell during tree-cutting and struck him. Thus, there is a causal connection between the conditions under which work was required to be performed and the resulting injuries, such that his injuries arose out of his employment or retention with Shellmar. Furthermore, he was injured in the yard where he and the others were working, during working hours, while waiting to complete his clean-up duties. Thus, his injuries also arose in the course of his employment or retention.

Tyson also asserts that he was not an employee because he was not issued a 1099 tax form. However, whether or not he was an employee is not dispositive, given the broader language of the policy exclusion, set forth above. Moreover, although Tyson was paid hourly in cash, he was never provided with any tax documents, and nothing was withheld from his pay, such evidence "is not a controlling or decisive factor." *Royal*, 333 Ga. App. at 885 (noting that evidence regarding method of payment and withholding of income tax and social security was not dispositive as to whether plaintiff was an employee or independent contractor); accord *Boatright v.*

_____

will and it cannot be construed as an altogether personal pursuit, as is the case during scheduled breaks").

7

*Old Dominion Ins. Co.*, 304 Ga. App. 119, 122 (1) (695 SE2d 408) (2010). Indeed, the fact that Tyson was not issued a tax form is immaterial in light of the undisputed evidence that the accident arose out of and in the course of his employment or retention with Shellmar.

2. Tyson and Rowe also assert that there is a genuine issue of material fact as to whether Rowe had knowledge of the policy exclusions and whether he relied on representations from his retail agent that "anyone" was covered by the policy, including his employees, such that the policy should have been reformed. Again, we disagree.

(a) Tyson and Rowe first assert that it is not clear from the evidence whether the exclusions to the policy were given to Rowe. But even assuming Rowe never received a copy of the policy, he is "bound by the exclusion. A party may be bound by the terms of a policy even when not having physical possession of it." *Southeastern Sec. Ins. Co. v. Empire Banking Co.*, 230 Ga. App. 755, 756 (3) (498 SE2d 282) (1998). "The general rule is that insureds are chargeable with knowledge of the contents of their policies." Id. See also *Surety Group, Inc. v. Ragsdale*, 197 Ga. App. 437, 438 (1) (398 SE2d 718) (1990) (noting that "[a]ctual delivery to the insured is not essential to the validity of the policy where, as here, it is not made so by the

8

terms of the policy itself"); accord *New York Life Ins. Co. v. Babcock*, 104 Ga. 67 (30 SE 273) (1898).

Moreover, the undisputed evidence shows that Scottsdale's agent delivered a copy of the policy, including the applicable injury-to-worker exclusion, to Shellmar's retail agent, Robert Langston. And "actual notice to the agent constitutes actual, not merely constructive, notice to the principal." *Gustafson v. Cotton States Mut. Ins. Co.*, 230 Ga. App. 310, 313 (496 SE2d 346) (1998); accord *Copeland v. Leathers*, 206 Ga. 280, 287 (2) (56 SE2d 530) (1949). See also OCGA § 10-6-58 ("Notice to the agent of any matter connected with his agency shall be notice to the principal.")

(b) Tyson and Rowe next assert that Langston was a "dual agent" of Scottsdale such that Rowe was entitled to rely on Langston's assertions that the policy covered "anyone," particularly in light of the fact that he never saw a full copy of the insurance policy. Indeed, Rowe testified that Langston told him that the insurance policy covered bodily harm to "anyone," including his employees.

Under Georgia law, "[i]ndependent insurance agents generally are considered agents of the insured, not the insurer, absent evidence that the insurer granted the independent agent authority to bind coverage on the insurer's behalf." *Kinard v. Nat.*

*Indem. Co.*, 225 Ga. App. 176, 178 (1) (483 SE2d 664) (1997). Here, there is no evidence that Scottsdale granted Langston authority to bind coverage on its behalf.[3] Alternatively, if an insurer holds out an independent agent as its agent and an insured justifiably relies on such representation, the independent agent will be considered the agent of the insurer. See *Kirby v. Northwestern Nat. Cas. Co.*, 213 Ga. App. 673, 678 (445 SE2d 791) (1994). Again, there is no evidence that Scottsdale held out Langston as its agent, such that Rowe could justifiably rely on his representations.

3. Finally, Tyson and Rowe contend that the trial court erred in granting summary judgment to Scottsdale because the insurance policy was not in conformance with the Surplus Line Insurance Law and, thus, is not enforceable.

---

[3] For this reason, *Southern Guar. Ins. Co. v. Powell*, 246 Ga. 487 (271 SE2d 831) (1980) and *Ga. Farm Bureau Mut. Ins. Co. v. Wall*, 242 Ga. 176 (249 SE2d 588) (1978) upon which Tyson and Rowe rely, are distinguishable. In *Wall*, a suit to reform an insurance contract based on an alleged mutual mistake, the court found that the jury was authorized to find that the insurer was bound by statements made by its own agent, who was authorized to write insurance on its behalf. See *Wall*, 242 Ga. at 178-79 (2) (noting that "defendant's agent stated that the endorsement would provide coverage for damage caused by ice and snow" and the agent had the authority to write insurance against snow and ice damage). Similarly, in *Powell*, the Court affirmed the denial of summary judgment to the insurer where the insured informed the insurer's agent that the policy mistakenly omitted coverage for the contents of a warehouse which were later lost in a fire. See *Powell*, 246 Ga. at 487-88.

Specifically, they assert the policy was issued in violation of OCGA §§ 33-5-26 and 33-5-27. Once again, we disagree.

OCGA § 33-5-26 provides:

(a) Every insurance contract procured and delivered as a surplus line coverage shall be initialed by or bear the name of the surplus line broker who procured it and shall have printed or stamped upon it the following: "This contract is registered and delivered as a surplus line coverage under the Surplus Line Insurance Law, [OCGA] Chapter 33-5."

(b) No surplus lines policy or certificate in which the policy premium is $5,000.00 per annum or less shall be delivered in this state unless a standard disclosure form or brochure explaining surplus lines insurance is attached to or made a part of the policy or certificate.

Contrary to Tyson and Rowe's argument, the record shows that the policy issued to Shellmar bears the requisite surplus-line certification and the name of the broker who procured it. The policy also includes the standard disclosure form.

OCGA § 33-5-27 (a) further provides that "[u]pon placing a surplus line coverage, the broker shall promptly issue and deliver to the insured evidence of the insurance consisting either of the policy as issued by the insurer or, if the policy is not then available, the surplus line broker's certificate." As discussed supra, the policy was delivered to Rowe's agent, which constituted actual notice to Rowe. Thus, the

11

policy was not issued in violation of OCGA §§ 33-5-26 and 33-5-27. In any event, neither Tyson nor Rowe has cited to any authority, and we have found none, to support their proposition that an insurer's failure to comply with these statutes renders a policy unenforceable.

For these reasons, the trial court did not err in granting summary judgment to Scottsdale.

*Judgment affirmed. Ellington, P. J., and Rickman, J., concur*.